**STURGIS EQUIPMENT COMPANY, INC., Plaintiff/Respondent,**

v.

**FALCON INDUSTRIAL SALES CO. and Edwin L. Johnson, Defendants/Appellants.**

Nos. 68100 & 68101.

Missouri Court of Appeals, Eastern District, Division Two.

July 16, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1996.

Application to Transfer Denied Oct. 22, 1996.

Ira M. Berkowitz, Clayton, for Edwin Johnson.

Lee G. Kline, Clayton, for Falcon Ind.

Kim Roger Luther, Luther & Associates, St. Louis, for Respondent.

CRANDALL, Judge.

Defendants, Falcon Industrial Sales Co. and Edwin L. Johnson,[1] appeal from the judgment of the trial court, in this court-tried case, in favor of plaintiff, Sturgis Equipment Company, Inc., in plaintiff's action for breach of a buy/sell agreement and in favor of plaintiff on defendant's counterclaim. We reverse and remand with direction.

The evidence, viewed in a light most favorable to the judgment below, reveals that Sturgis Equipment Company, Inc. (Sturgis) was a wholesale distributor of fluid power components and automatic lubrication systems. Edwin Johnson was employed by Sturgis in 1982 as a salesman. Johnson did not have a written employment contract. He was later promoted to the position of sales manager, but eventually functioned as a design-build engineer. Johnson's base salary was $66,000.

On July 29, 1987, Johnson and John Butler, the owner of Sturgis, executed a buy/sell agreement which would make Johnson a stockholder in Sturgis. The buy/sell agreement contained the following clause:

> In the event of a voluntary termination by a Stockholder under this paragraph, the departing Stockholder agrees that he will not compete for two (2) years from the time of termination, either directly or indirectly, with the Corporation, in the Corporation's market area at the time of termination.

The buy/sell agreement also provided that should Butler or Johnson desire to sell their stock, or if their employment was terminated voluntarily or involuntarily, they would first offer their stock to the corporation at book value. If the corporation rejected this offer, Butler or Johnson would be required to offer their shares to other stockholders. The corporation would then be bound to purchase any balance remaining unsold at the end of

---

1. Although Falcon Industrial Sales Co. was not a party to the buy/sell agreement or any alleged compensation agreement, Sturgis filed this ac-

tion against Johnson and Falcon collectively. However, for the purposes of this opinion, we will refer to the defendants in the singular.

sixty days following Butler or Johnson's termination.

When Johnson expressed concern about his financial ability to purchase stock, Butler agreed to increase Johnson's salary to enable him to make the stock purchases. Under this arrangement, in addition to his base salary, Johnson received a monthly check from Sturgis to cover the cost of the stock purchase and incidental tax consequences. He received $36,971 annually to buy the stock, and an additional $4,000 to pay the increased income taxes due on the stock purchase compensation. Johnson signed sixty one-month contracts to purchase stock from Butler.

At Johnson's insistence, Butler and Johnson later reviewed Johnson's compensation benefits, and in a memorandum dated October 26, 1988, Butler projected Johnson's compensation for the remainder of the fiscal year. According to this memorandum, Johnson's base salary and stock compensation would remain the same, and his salary to cover taxes would increase to $13,000. Additionally, the memorandum projected an incentive package of 1% of the gross profit from five salesmen and a .5% bonus for exceeding a $900,000 sales objective, to begin May 1, 1989. Butler testified that Johnson rejected the proposal outlined in the memorandum.

In March 1989, Butler and Johnson met again to discuss Johnson's employment and compensation. Butler informed Johnson that he could no longer afford to pay Johnson for the purchase of Sturgis stock and the corresponding tax consequences. In a memorandum dated March 15, 1989, Butler outlined a new job description and compensation package. Under this proposal, Johnson would resume the duties of a sales manager and would no longer be involved in any design/build projects. Butler stated that he had been dissatisfied with Johnson's performance as a design/build engineer. Johnson would still receive his $66,000 base salary, and would also receive the 1% of sales and .5% bonus proposed in the October memorandum, but would no longer receive the compensation for the stock purchases and resulting tax consequences. Butler testified that Johnson accepted this new job description and compensation program on March 20, 1989, and received his first incentive check on April 15, 1989.

On April 18, 1989, Johnson entered Butler's office and asked Butler if he was going to receive his check for the purchase of Sturgis stock. When Butler reminded Johnson that he would no longer pay for Johnson's purchase of stock, Johnson replied that because his compensation had been cut, he believed he was being fired. Butler maintained that Johnson was not being fired.

Johnson left Sturgis, and formed his own corporation, Falcon Industrial Sales, Co. (Falcon). Falcon was incorporated on April 26, 1989. Shortly after incorporation, Falcon employed two of Sturgis' salesmen. Falcon sold products competitive with those sold by Sturgis. Many of its sales were made to existing Sturgis customers.

After Johnson left Sturgis, Sturgis proceeded to buy back the stock purchased by Johnson, making monthly payments beginning November 1989, under a five-year buy back agreement. Johnson never tendered any of the stock. After twenty-seven payments, Sturgis sent a demand letter to Johnson, warning that if Johnson did not tender the stock, it would discontinue making the monthly payments. Johnson still failed to tender his shares of stock, and Sturgis discontinued its payments.

The trial court awarded plaintiff $292,663.97 with postjudgment interest for its breach of contract action, and found against defendant and for plaintiff on defendant's counterclaim for breach of contract.

In his first point, defendant claims the trial court erred in finding Johnson breached the covenant not to compete because such an agreement is not favored by the law, Sturgis' action in substantially reducing Johnson's salary resulted in an involuntary termination, and the covenant was vague and over broad.

Covenants not to compete are not favored in the law. *House of Tools and Engineering, Inc. v. Price*, 504 S.W.2d 157, 159 (Mo.App.1973). Restrictive covenants limiting individuals in the exercise or pursuit of their occupations are in restraint of trade.

*Continental Research Corp. v. Scholz*, 595 S.W.2d 396, 400 (Mo.App.1980). The burden of establishing the validity of such covenants rests upon the parties claiming their benefits. *Id.* The purpose of the restrictive covenant is not to punish employees, but to protect employers from unfair competition by former employees without imposing unreasonable restraint on the employees. *Id.*

■ Generally, to determine whether a restriction is reasonable, courts inquire whether it is no greater than fairly required for the protection of the party seeking to enforce it. *Continental*, 595 S.W.2d at 400. When making this assessment, courts consider the circumstances surrounding the restriction, including its subject matter, the purpose it serves, the situation of the parties, the limits of the restraint, the specialization of the business involved, the consideration supporting the restraint, the threatened danger to the employer absent the restriction, and the economic hardship imposed on the employee. *Superior Gearbox Co. v. Edwards*, 869 S.W.2d 239, 247 (Mo.App. S.D.1993).

> Additionally, in Missouri an employer may only 'fairly require' the protection of certain narrowly defined and well recognized interests against possible appropriation by a former employee. These protectable interests are limited to trade secrets and customer contacts, the latter being essentially the influence an employee acquires over his employer's customers through personal contact.

*Continental*, 595 S.W.2d at 400.

■ In our case, there is no evidence that Johnson attempted to exploit any knowledge of trade secrets when he left Sturgis, and indeed, the buy/sell agreement does not acknowledge that any trade secrets exist. Here, the question would be whether Sturgis had a protectable interest in customer contacts established by Johnson during his employment by Sturgis. The evidence revealed that Johnson had very little contact with Sturgis' customers; in fact, Butler testified that in 1989 Johnson was actually functioning more as a design-build engineer, never making sales calls with the outside salesmen. His influence over Sturgis' customers, therefore, would be minimal, and Sturgis would not have a protectable interest in Johnson's customer contacts.

■ Furthermore, an examination of the consideration supporting the restraint reveals insufficient consideration to support the non-compete clause. A restrictive covenant contained in a stock purchase agreement was enforced in *Superior Gearbox Co.*, 869 S.W.2d at 247–248. As part of that covenant, the Superior shareholders acknowledged that the milling machinery and procedures developed by the company were unique and were a valuable part of the company's assets. *Id.* at 243. Additionally, as part of the same agreement, the shareholders received a five percent annual bonus for remaining with Superior. *Id.* Here, the buy/sell agreement basically stated that in exchange for Sturgis agreeing to sell stock to Johnson and to buy back Johnson's stock if he desired to sell or if his employment terminated, Johnson agreed to not compete with Sturgis for two years if he voluntarily terminated his employment. The agreement did not state that the purpose of the non-compete clause was to protect any special interest of the company. No additional consideration was specified in the contract. The clause was not part of an employment contract; Johnson was an employee at will. The restriction contained in the buy/sell agreement was greater than fairly required for Sturgis' protection and was not supported by sufficient consideration. Defendant's first point is granted.

■ In his sixth point, defendant Johnson claims the trial court erred in ruling against Johnson on his amended counterclaim for breach of the buy/sell agreement because it was undisputed that Sturgis exercised its rights to purchase stock, but later discontinued its payments to Johnson before the full balance was paid. The buy/sell agreement provided:

> (d) In the event said Stockholders do not purchase all of the stock so tendered by the Seller and any balance remains unsold at the end of the sixty (60) day period of the Stockholder's option, then the Corporation shall be bound to buy the balance of any stock remaining and the Seller shall be required to sell any balance

**18**

of stock remaining to the Corporation for the value as defined hereafter in Paragraph 9. If this third option becomes operative, the Corporation has the additional option to pay for any balance of remaining stock not purchased by the Stockholders for cash, or in lieu of a lump sum cash payment, may make periodic payments in equal installments over a five (5) year period, the balance shall bear interest at the rate of nine percent (9%). . . .

Plaintiff conceded that Sturgis exercised its option to purchase Johnson's stock and that it actually made twenty-seven of the sixty monthly installment payments to Johnson; however, plaintiff ceased making the monthly payments because Johnson failed to tender any of the stock certificates. A court exercising its equitable powers will not make a contract between parties but will enforce one, if it is definite, certain, and complete. *De-Witt v. Lutes*, 581 S.W.2d 941, 946 (Mo.App. 1979). The contract between the parties here was definite, certain, and complete; therefore, the trial court should have used its equitable powers to enforce the buy/sell agreement as it pertained to the stock repurchase. Defendant's sixth point is granted.

In his final point, defendant Johnson claims the trial court erred in rendering judgment against Johnson on his counterclaim on the issue of breach of a compensation agreement. In this argument, Johnson characterizes the October 26, 1988 memorandum which projected Johnson's compensation for the remainder of the fiscal year as a compensation agreement. The evidence adduced at trial revealed that no written employment contract existed between Sturgis and Johnson; Johnson was an employee at will. Therefore, Sturgis could change his compensation at any time for any reason. Additionally, there was evidence that Johnson rejected the proposal outlined in the October memorandum and acquiesced to the March reduction in compensation. The trial court did not err in entering judgment against Johnson on this point. Defendant's final point is denied.

In light of our holding on point one, defendant's remaining points need not be addressed. The judgment of the trial court in favor of plaintiff on plaintiff's claim for damages is reversed. That portion of the judgment in favor of plaintiff on defendant's counterclaim in which the court denied enforcement of the buy/sell agreement is reversed and remanded with direction to enforce that part of the buy/sell agreement requiring Johnson to tender the stock certificates and Sturgis to resume its installment payments; in all other respects, the judgment on defendant's counterclaim is affirmed. Costs are assessed against plaintiff.

CRAHAN, P.J., and DOWD, J., concur.