**ALLTYPE FIRE PROTECTION COMPANY d/b/a Lynch Fire Protection, Inc., Plaintiff–Appellant,**

v.

**Ron MAYFIELD, Individually, and d/b/a A–1 Fire Protection, and Marmic Fire & Safety Co., Defendants–Respondents.**

**No. ED 80262.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Sept. 10, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 22, 2002.

Application for Transfer Denied
Nov. 26, 2002.

John L. Oliver, Jr., Cape Girardeau, MO, for appellant.

Walter S. Drusch, Malcolm H. Montgomery, Cape Girardeau, MO, for respondents.

CHARLES B. BLACKMAR, Senior Judge.

Under date of July 1, 1998, defendant Mayfield entered into an employment agreement with plaintiff Alltype Fire Protection Company, d/b/a Lynch Fire Protection, Inc. (Alltype). This contract was a continuation of his existing employment. Significant terms of this agreement read as follows:

3. *Duties.* Employee shall be employed in the position of Branch Service Manager. Among other things, Employee's duties shall include the sale, inspection, servicing and installation of fire prevention devices and equipment and fire safety systems.

. . .

6. *Restrictive Covenants*

A. Employee acknowledges that by reason of his/her employment by Employer (s)he has or may acquire technical, financial or business information about Employer which is not published or readily available to the public including, but not limited to, trade secrets, . . . and lists of and other information pertaining to customers of Employer ("Confidential Information"). . . .

B. Employee acknowledges that by reason of his/her employment by Employer, (s)he has or may acquire Confidential Information, (s)he has or may become personally acquainted with Employer's customers . . . , and that Employer has or may spend considerable time, money and/or energy to train Employee. Employee, therefore, agrees that during the term of this agreement and for a period of twenty four (24) consecutive months immediately following termination of Employee's employment with Employer, regardless of how, when or why that employment may end, Employee shall not in any capacity, directly or indirectly, for himself/herself or any

other person or entity, actually or attempt:

(i) to engage in the sale, inspection, servicing or installation of fire extinguishers, other fire prevention devices and equipment, or fire safety systems, or accept employment from or be employed by or perform duties for or render services to any employer, person or entity engaged in the Fire Safety Business ... within areas having a radius of one hundred (100) miles of the location of each of the current business offices of Employer ... or

(ii) to solicit or interfere with, takeaway or divert any customer of Employer, or the business or patronage of any such customer;....

The agreement goes on to provide that the employer may seek temporary and permanent injunctive relief for violations and also provides as follows:

7. *Remedies.*

C. In the event this Agreement shall be placed in the hands of an attorney for enforcement, Employee agrees to pay all costs and expenses of such enforcement, including reasonable attorneys' fees....

On January 29, 2001, defendant Mayfield gave notice orally and in writing of his decision to terminate his services for Alltype. During the last week of February he entered into the employment of Marmic, a competitor. Marmic's local manager, Michael Smotherman, testified that he hired Mayfield for the primary purpose of servicing Marmic's customers.

On March 9, 2001, the plaintiff filed in the court below a petition in two counts against Mayfield and Marmic.

Count I, which appears to be directed solely against Mayfield, alleged violation of the non-compete agreement, sought specific injunctive relief against alleged violations of the non-compete agreement, and requested a temporary restraining order. The prayer of Count I also included the usual equitable request for other relief, and "for plaintiff's costs incurred and expended herein." There was no specific prayer for monetary damages or for attorneys' fees.

Count II declares solely against Marmic. The prayer is as follows:

WHEREFORE, Plaintiff prays this Court issue its injunction against Marmic ... enjoining it from using information acquired from Mayfield and prohibiting it from approaching any customer of the Plaintiff and awarding to the Plaintiff such sum as maybe shown to have been incurred as a result of the misuse of confidential trade information and for such other and further relief as may be granted.

On March 9, 2001, the court below, Hon. John W. Grimm presiding, entered a Temporary Restraining Order as prayed. On March 19, 2001, the case was transferred to Judge William L. Syler. On May 3, 2001, the plaintiff filed "Application for Order to Show Cause and for Adjudication of Contempt" against both defendants. The court set a hearing on the application and on the granting of a permanent injunction for May 25, 2001, ordering that the TRO remain in effect until the hearing. The defendants filed answers to the petition.

On May 19, 2001, Marmic terminated Mayfield's employment. Marmic's local manager, Smotherman, ordered the termination at the suggestion of Marmic's counsel, because of the pending litigation. Smotherman testified that he was previously unaware of any contract between the plaintiff and Mayfield which restricted Mayfield's future employment.

Evidence was heard on several days, concluding on September 5, 2001. No evidence was offered on the matter of attorneys' fees. Order Granting Permanent Injunction was issued on September 15, 2001, and an amended order was issued on September 25, 2001. The order granted a permanent injunction against both defendants substantially as prayed, except that the defendants were enjoined for one year only, commencing January 29, 2001. The order did not include any damages or attorneys' fees against either defendant. The order contained specific findings as follows:

13. The employment agreement, and specifically the covenant not to compete, is reasonable in time; duration of two (2) years from the date of termination of employment is unreasonable. One (1) year is reasonable. The scope of the covenant is reasonable....

14. That Ron Mayfield has violated the terms of the Temporary Restraining Order by engaging in the fire protection business, and in particular by servicing and installing fire protection equipment after the entry of the Temporary Restraining Order on March 9, 2001.

The court also found that "Marmic, being in privity with Mayfield and having taken advantage of Mayfield's knowledge, is bound by the injunction." The court found Mayfield to be in contempt of the Temporary Restraining Order, but made no such finding as to Marmic.

Defendant Mayfield filed a timely post-trial motion on October 25, 2001, which was overruled. The plaintiff filed no post-trial motion of any kind. Rather, on October 16, 2001, it filed a Notice of Appeal. Neither defendant has appealed.

In its first point, the plaintiff asserts that the court erred in limiting the temporal length of the injunctive relief granted to one year from the date Mayfield voluntarily terminated his employment, and that the court should have granted relief for the entire two-year period specified in the employment contract. We agree with this contention.

■ The scope of appellate review of a court tried case is defined in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). That case enjoins appellate courts to show great deference to the findings of trial judges, but it authorizes reversal of a decree or judgment which is "against the weight of the evidence," or which "erroneously declares the law," or which "erroneously applies the law."

The trial court necessarily found that the plaintiff had a protectable interest in its trade secrets and customer contacts. The defendants have not appealed from this determination, and so the cases they cite about the burden one must bear when seeking to enforce a restrictive covenant are not applicable. The court has found that enforcement is proper, and this conclusion is amply supported by the evidence.

■ The term of two years, furthermore, is supported by the overwhelming weight of case authority. *See Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 75 (Mo. banc 1985), sustaining a three-year restriction for a technician's position. Following the lead of that case is *AEE–EMF, Inc. v. Passmore*, 906 S.W.2d 714, 724 (Mo.App. W.D.1995), enforcing a three-year restriction. Defendant Mayfield cites *Sturgis Equipment Co. v. Falcon Industrial Sales Co.*, 930 S.W.2d 14 (Mo.App. E.D.1996) as holding that a two-year restriction was unreasonable, but he misreads that case. The essence of the holding is that the evidence did not support a finding of knowledge of trade secrets or of customer contact sufficient to support a restrictive

covenant, and so did not justify any kind of restriction. The court did not discuss the reasonableness of a period of two years as opposed to a shorter period. We are cited to no restrictive covenant case in which a court has reduced a restriction of two years.

Here the defendants are bound by the finding that the plaintiff had a protectable interest. Given this finding, we believe that the trial judge acted arbitrarily and unreasonably in substituting his judgment for that of the parties as to the appropriate duration of the restriction. We firmly believe, in the language of *Murphy v. Carron*, that the trial court's decree is wrong, in that it "erroneously applies the law."

■ We disagree, however, with the plaintiff's claim that the two-year period should run from the termination of Mayfield's employment by Marmic (May 29, 2001) rather than from the date of his resignation from the plaintiff's employment on January 28, 2001. The essence of the contract was that Mayfield would be free, after two years, to enter into competing employment. The plaintiff cites to *Superior Gearbox Co. v. Edwards*, 869 S.W.2d 239 (Mo.App. S.D.1993) as support for its position that the two-year period should run from the termination of Mayfield by Marmic, but the discussion on pages 246 and 247 of that opinion demonstrates clearly the normal rule that an injunction enforcing a restrictive covenant should run from the date set out in the employment contract rather than from the date of any judgment in the case. To hold otherwise would be to apply a longer restriction than the parties had agreed to.

In the plaintiff's second point, error is asserted in the court's failure "to award the sum lost" and "to award contractually required attorneys' fees."

■ The prayer of Count I of the petition, directed only against Mayfield, contains no explicit demand for either damages or attorneys' fees. Rule 55.05 requires the specific pleading of claims for damages, including, except in tort cases, the amount sought. The plaintiff's petition does not lay a foundation for a claim for damages against Mayfield.

The plaintiff's application for order to show cause does mention attorneys' fees, as specifically authorized by the contract, but the plaintiff did not introduce any evidence as to the value of its attorneys' services and, so far as the record shows, did not bring this claim to the court's attention at the hearing. The equitable prayer for "general relief" is not sufficient to require the court to award either damages or attorneys' fees, in the absence of an express claim. The prayer for costs does not comprehend either damages or attorneys' fees.

The plaintiff could have sought postjudgment relief as to damages and attorneys' fees, but instead filed a notice of appeal. We need not enter into a lengthy discussion about when post-trial motions are appropriate in a judge-tried case because of the familiar principle that an appellate tribunal is not obliged to grant relief on matters which could have been, but were not, presented to the trial court. The relief sought under Point II was not sought at the trial stage, or in available post-trial motions.

■ Count II of the petition is solely directed against Marmic. Marmic does not complain on appeal about the injunctive relief decreed against it, but its evidence, which the trial court could accept, indicates that its local manager, Smotherman, was unaware of the restrictive covenant until some time in May of 2001, and that on learning of the issuance of the injunction, he promptly terminated Mayfield. Nor is there evidence that other agents of Marmic knew of these restrictions. Under these circumstances the plaintiff has failed to demonstrate error in

the failure to award damages and attorneys' fees against Marmic. The trial court's determination that Marmic was "in privity" with Mayfield may support injunctive relief, but does not necessarily mandate the award either of damages or attorneys' fees against a litigant who was not a party to the contract in issue.

The judgment is reversed and the case is remanded with directions to modify the permanent injunction so that it runs for a two-year period commencing January 29, 2001. The judgment is otherwise affirmed.

LAWRENCE E. MOONEY, C.J., and LAWRENCE G. CRAHAN, J., concur.