**SUPERMARKET MERCHANDISING & SUPPLY, INC., Plaintiff–Respondent,**

v.

**Jeffrey MARSCHUETZ, Defendant–Appellant.**

**No. ED 86393.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 16, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 20, 2006.

Application for Transfer Denied Aug. 22, 2006.

Robert A. Kaiser, Cynthia A. Petracek, Russell C. Riggan, Jeffrey McPherson, Armstrong Teasdale, L.L.P., St. Louis, MO, for appellant.

Jane Cohen, Law Offices of Jane Cohen, St. Louis, MO, Laird Hetlage, Gillespie, Hetlage & Coughlin, L.L.C., St. Louis, MO, for respondent.

KENNETH M. ROMINES, Judge.

### Introduction

Defendant–Appellant Jeffrey Marschuetz ("Marscheutz") appeals from the judgment of the Circuit Court of the City of St. Louis, the Honorable David L. Dowd presiding, after the court granted Plaintiff–Respondent Supermarket Merchandising & Supply's ("Supermarket") petition for an injunction to enforce the provisions of a non-competition agreement in the employment contract between Marschuetz and Supermarket. We reverse and remand.

### Factual and Procedural Background

Marschuetz brings one claim of error, and argues that the circuit court erred in granting a permanent injunction in favor of his former employer, Supermarket, which prohibited him from working for any of Supermarket's direct competitors or from soliciting or doing business with any of Supermarket's customers for a specified period of time. Marschuetz argues that he is free from the constraints of the restrictive covenant because Supermarket previously committed three material breaches of the employment contract, thus precluding Supermarket from enforcing its terms. We agree.

Our review of the salient facts of this case reveals that Supermarket is a nationwide company that sells store fixtures and display racks to grocery stores. Supermarket employed Marschuetz as one of its salesmen from 1993 until he resigned in October of 2003. At the time of his termination, Marschuetz was Supermarket's "West Coast Regional Manager," based in California. On 13 June 2000, after Marschuetz had been working for Supermarket for approximately seven years, Supermarket had Marschuetz sign a "Confidentiality and Non–Competition Agreement" ("Agreement") as a condition of his continued employment. The Agreement provided, inter alia, that if Marschuetz ceased working for Supermarket for any reason he would be prohibited from "engag[ing] in any activity which is directly or indirectly in competition with the distribution, sale, or leasing of any fixture or type of products or services sold by Supermarket in the United States ..." for a period of two years. In addition, Marschuetz was prohibited from soliciting or contacting any of Supermarket's customers for a period of five years. The Agreement also provided for Marschuetz's compensation, and specifically held that "[e]mployee shall receive the compensation as is mutually agreed upon, which may be adjusted from time to time, as full compensation for services performed under the agreement." Importantly, the Agreement specifically provided that "no modification shall be binding upon the Employee or Supermarket Merchandising unless made in writing and signed by the Employee and an authorized officer of Supermarket Merchandising."

Shortly after Marschuetz signed the Agreement, Supermarket instituted three unilateral changes to the Agreement. First, in early 2002 Supermarket instituted a new "charge back" policy that withheld a portion of a salesperson's commissions until a customer's invoice was paid. Prior to this policy, a salesperson's commissions were fully paid when a customer's order was "booked;" that is, when the customer tendered the order and Supermarket accepted the order. The second unilateral change to the Agreement occurred in May of 2002, when Supermarket instituted a "paid on paid invoices" policy. This policy essentially provided that a salesperson's commissions would only be paid when a customer's invoice was paid in full. The net effect of this change was to fully shift the risk of customer non-payment from

Supermarket to Marschuetz. Finally, in January of 2003 Supermarket instituted a policy whereby any salesperson who left the company would only be paid commissions on customer invoices paid as of the employee's last day of employment. The prior policy provided for the full payment of commissions for customer orders booked before termination, even though they were not paid until after termination.

Following each of the aforementioned changes to the Agreement, Supermarket attempted to persuade Marschuetz to formally agree to them in writing. However, Marschuetz voiced his objection to each change, and refused to sign any such agreements. There is evidence that Marschuetz signed *acknowledgements* that he was aware Supermarket had unilaterally made each change, but we do not believe these acknowledgements constitute legally-binding *agreements* to the changes.

Following the third change to the Agreement, Marschuetz tendered his letter of resignation to Supermarket on 1 October 2003, and requested that he be paid all commissions owed to him under the prior policy—$27,082.08. However, Supermarket calculated Marschuetz's outstanding commissions under the new policy, and wrote him a check for $3,063.05. Then, on 8 October 2003 Supermarket offered to pay Marschuetz an additional $24,000 if he would sign a new agreement acknowledging, *inter alia*, that the original Agreement had incorporated the aforementioned three policy changes. The proposed new agreement also specifically reiterated that Marschuetz would be prohibited from working for a competitor for two years and soliciting Supermarket's customers for five years. Marschuetz refused to sign the proposed new agreement, and thus, Supermarket did not pay Marschuetz the $24,000 it had offered.

Shortly after leaving Supermarket, Marschuetz began to work for a company called Universal Custom Display ("Universal"), a company that engages in principally the same business as Supermarket. At trial, Supermarket's president, Kevin Knasel, testified that shortly after Marschuetz left his employment at Supermarket, sales to its biggest customer dropped substantially. Mr. Knasel further testified that he believed Marschuetz had contacted this competitor and solicited its business while working for Universal, in violation of the restrictive covenant in the original Agreement.

Following these developments, Supermarket filed this action in September of 2004, alleging that Marschuetz had violated the non-competition provisions of the Agreement, and sought a temporary restraining order as well as a preliminary and permanent injunction against Marschuetz. In Marschuetz's reply, he asserted, *inter alia*, that Supermarket's petition in equity was barred by the doctrine of unclean hands in that Supermarket had committed a "prior material breach" of the Agreement in the following two ways: (1) Supermarket "unilaterally changed the terms of Marschuetz's compensation without Marschuetz's consent and/or in spite of Marschuetz's objection"; and (2) Supermarket "failed to pay all commissions owed to Marschuetz." On 29 November 2004, after hearing evidence in the matter, the trial court entered its Order and Preliminary Injunction enjoining Marschuetz from doing business with or soliciting Supermarket's customers or using Supermarket's confidential information in any way. Then, on 18 April 2005, the trial court entered its order granting a permanent injunction. Specifically, the trial court held that Supermarket's "policy changes did not materially and adversely alter the agreed upon compensation system," and thus, Supermarket had not committed a

prior breach of the Agreement. Furthermore, the trial court held that Supermarket did not owe Marschuetz the commissions he sought after his resignation. This appeal followed.

### Standard of Review

We recognize that an action for an injunction is an action in equity. *Systematic Business Services, Inc. v. Bratten,* 162 S.W.3d 41, 46 (Mo.App. W.D.2005). We review any action in equity just as any court-tried case, and thus, in accordance with *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *Bratten,* 162 S.W.3d at 46. That is, we must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

### Discussion

This case essentially involves determining whether Supermarket is barred from enforcing the terms of its non-competition Agreement after it unilaterally instituted three changes to Marschuetz's compensation plan, over his objection. Because we believe that each of the changes Marschuetz complains of constituted a material breach of the agreement, and thus, rendered Supermarket's hands unclean, we hold that Supermarket is barred from enforcing, in equity, the terms of the non-competition Agreement against Marschuetz. Thus, we reverse the trial court's grant of a permanent injunction against Marschuetz.

Missouri courts recognize that injunctive relief is "a harsh remedy which is to be used sparingly and only in clear cases." *Coursen v. City of Sarcoxie,* 124 S.W.3d 492, 499 (Mo.App. S.D.2004). An indispensable requirement for obtaining injunctive relief is the "wrongful and injurious invasion of some legal right existing in the plaintiff." *Id.* Furthermore, the party seeking an injunction bears the burden of proving it is entitled to this relief. *Id.* With regard to an injunction to enforce a restrictive covenant in an employment agreement, we are mindful that these agreements "restrain commerce" and limit an employee's "freedom to pursue his or her trade." *Osage Glass, Inc. v. Donovan,* 693 S.W.2d 71, 73 (Mo. banc 1985). Accordingly, Missouri courts "carefully restrict" the enforcement of such agreements. *Id.* at 73–74.

We recognize the general principle of contract law that "[a] party to a contract cannot claim its benefits where he is the first to violate it." *Forms Mfg., Inc. v. Edwards,* 705 S.W.2d 67, 69 (Mo.App. E.D. 1985). Regarding employment contracts containing non-competition agreements, this Court has specifically recognized that when an employer first breaches an employment agreement before the employee allegedly violates the non-competition agreement, the employer is barred from enforcing the restrictive covenant against the employee. *Id.*

The dispositive question in this case is whether Supermarket's three unilateral changes to Marschuetz's compensation structure constitute material breaches of the Agreement. The question of whether an employer committed a material breach is largely a factual question reserved for the trier of fact—in this case, the court sitting in equity—and thus, this court must give deference to the equity court's opportunity to observe the parties while testifying, assess their credibility, and weigh the sincerity of their character. *Luketich v. Goedecke, Wood & Co.,* 835 S.W.2d 504, 507 (Mo.App. E.D.1992). In this case, however, we find that the trial court erred in finding that Supermarket

had not first committed a material breach of this Agreement.

■ We reach this conclusion because we believe the three unilateral changes to the Agreement were material because they, first, substantially altered the manner in which Marschuetz was paid, and second, affected the amount he was paid. We find support for this conclusion in several Missouri cases in which this Court found that similar alterations to employment contracts constituted a material breach of the contract.[1] For example, in *Smith–Scharff Paper Co. v. Blum*, 813 S.W.2d 27, 29 (Mo.App. E.D.1991), this Court held that an employer, Smith–Scharff Paper, committed a prior material breach when it unilaterally changed the compensation structure of one of its salaried sales trainees. The employee, Blum, agreed to work as a salesman for a salary of $2,500 per month, guaranteed for one year or until such time as he reached the status of "sales representative." In order to achieve this status, Blum was required to generate sales commissions that met or exceeded his monthly salary for three consecutive months, at which time he would be paid the full value of the commissions he earned. *Id.* However, shortly after signing the contract, Smith–Scharff unilaterally placed Blum on a commission-only compensation structure before he achieved the status of "sales representative." *Id.* This Court found that such a change in the salesman's compensation structure "was violative of the employment agreement" because it forced Blum to choose between "losing his job or retaining his position ... compensated solely on a commission basis" before he was ready. *Id.*

In this case, like in *Smith–Scharff,* Marschuetz was faced with the Hobson's choice of quitting his job or accepting the "charge back" and "paid on paid invoices" policies unilaterally imposed by Supermarket. These changes, although not identical to the salary-to-commission change imposed in *Smith–Scharff,* substantially altered the manner in which Marschuetz was paid by placing a greater risk of customer non-payment of invoices on Marschuetz than originally bargained for. In addition, Supermarket's change of the policy regarding commissions paid to terminated employees denied Marschuetz approximately $24,000 in commissions that he would have been paid under the original Agreement. This policy change was clearly material to Marschuetz's overall compensation structure. Accordingly, Supermarket's unilateral change of these policies constituted material breaches of the original Agreement.

■ Supermarket argues that even if the three policy changes were made without Marschuetz's approval and were material, Marschuetz ratified them by his conduct in cashing all his commission checks and not threatening to quit or file a lawsuit. Thus, as Supermarket's argument goes, Marschuetz should be estopped from claiming that it first violated the Agreement. Even more curiously, in its brief Supermarket accuses Marschuetz of making "legal" arguments in response to its petition for an injunction, and notes that Marschuetz never alleged that these policy changes were "material breaches" until after he was sued. We note that attorneys are encouraged, if not required, to make "legal" arguments in their briefs filed with this Court. In fact, we found Marschuetz's "legal" arguments particularly

---

1. *See generally Forms Mfg., Inc.,* 705 S.W.2d at 70 (holding that an employer committed a material breach of an employment agreement where it unilaterally changed salesman's compensation structure to require a "monthly minimum contribution" not originally bargained for).

persuasive, and accordingly, find in his favor. As for Supermarket's argument that Marschuetz ratified the policy changes by his conduct, we find this argument without merit.

We note that as a general rule "[a]n employee cannot repudiate the unfavorable terms of [a] modified contract when he has claimed the benefits of continued employment under it." *Forms Mfg., Inc.*, 705 S.W.2d at 70. However, the burden is on the employer to prove that the employee waived the employer's breach of contract. *Id.* In *Forms Mfg.*, this Court held that an employee did not waive his employer's prior breach of their employment contract by continuing to work for an additional six months after the breach first occurred. *Id.* This Court noted that the employee "voiced opposition" to his employer's unilateral change, and was not charged with waiver because he initially attempted to persuade his employer to change the policy at issue. *Id.* In addition, this Court noted that employee's attempts to change the policy proved futile, and employee reasonably used the remainder of the six months to secure new employment. *Id.*

In this case, Marschuetz continued his employment for nine to ten months after the imposition of the third policy change, and approximately a year and a half after the first change. Like the employee in *Forms Mfg.*, Marschuetz voiced his opposition to the changes while maintaining his employment. Furthermore, it is reasonable to expect that Marschuetz would take some time to secure additional employment before quitting his job at Supermarket, and thus, we cannot say that Supermarket has met its burden of proving that Marschuetz waived Supermarket's prior breaches of the Agreement.

Since each of these three changes were material and implemented over Mar-schuetz's objection without his written approval, we conclude that Supermarket committed a prior breach of the employment Agreement. Accordingly, we hold that Supermarket is barred from enforcing the restrictive covenant in this Agreement. Point granted.

### Conclusion

For the foregoing reasons, the judgment of the circuit court granting Appellant Supermarket's petition for a permanent injunction against Marschuetz is reversed. In addition, the circuit court's order that court costs are taxed against Marschuetz is hereby reversed, and costs are taxed to Supermarket.

GARY M. GAERTNER, SR., P.J., and GEORGE W. DRAPER III, J., concur.