**JUMBOSACK CORPORATION,**
Appellant,

v.

**Bob BUYCK, Respondent.**

**No. ED 98134.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 21, 2013.

Motion for Rehearing and/or Transfer
to Supreme Court Denied June
26, 2013.

Application for Transfer Denied
Aug. 13, 2013.

Brian E. McGovern, Chesterfield, MO, for appellant.

David M. Slaby, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

JumboSack Corporation (Employer) appeals the trial court's grant of summary judgment to Bob Buyck (Employee) on its claim for breach of a non-compete agreement. Employer claims the trial court erred in granting summary judgment because: (1) the non-compete agreement was supported by valid consideration; (2) the employment agreement provided that "[a]ny changes in Employee's compensation, position or job duties subsequent to the execution of this Agreement shall in no way void or otherwise affect the remaining provisions of this Agreement"; (3) whether Employer materially breached the employment agreement is an issue of fact; (4) the parol evidence rule precluded Employee from arguing that an oral contract modified the plain and unambiguous terms of the non-compete agreement; and (5) whether Employer waived its right to enforce the non-compete agreement against Employee is an issue of fact. We reverse and remand.

### Factual and Procedural Background

Employee began working as a salesman for Employer, a supplier of large polypropylene bags used for storing and transporting "dry bulk flowable products," in August 2003. Employer agreed to pay Employee an annual salary of $70,000 plus a $500/month car allowance, sales expenses, and fuel expenses. Employer did not ask Employee to sign a non-compete agreement at the time of hire.

Approximately six months after Employee began working for Employer, Employer's president, Mike Reynoso, directed Employer's then-sales manager, Joe Wurm, to present Employee with a non-compete agreement, entitled "Employment–Confidentiality Agreement" (Agreement). The Agreement provided, in relevant part:

> As a separate covenant under this Agreement, Employee covenants that he shall not, for a period of three (3) years after termination of his employment with Employer for whatever reason, directly or indirectly, on behalf of himself or any third party, make any sales contacts with, solicit or accept business from, or supervise or manage any sales activities over any customer(s) of Employer for whom Employee had sales responsibility during the period that Employee was employed by Employer, provided, however, that this restriction shall only apply to products or services which are competitive with those of Employer.

The Agreement also provided: "Any changes in Employee's compensation, position or job duties subsequent to the execution of this Agreement shall in no way void or otherwise affect the remaining provisions of this Agreement." Employee initially refused to sign the Agreement.

However, after Wurm informed Employee that Employer would terminate his employment if he did not sign, Employee signed the Agreement on February 1, 2004. Employer did not provide Employee any additional compensation or benefit as consideration for his signing the Agreement.

Effective April 1, 2005, Employer changed Employee's compensation structure to a salary of $57,000 plus a commission rate of 1.5%. Employer later reduced Employee's rate of commission to 1.25%. Employer did not always pay Employee's commissions in a timely manner.

In January 2009, Reynoso informed Employee that Employer intended to lower Employee's salary to $50,000. On February 20, 2009, Employer announced via email a new policy pursuant to which, if a salesperson failed to obtain from a customer a signed purchase order and that customer failed to pay for its purchase, the salesperson would be responsible for one-third of the unpaid invoice. Employee resigned his employment the same day.

Employee subsequently accepted employment as a salesperson with Employer's competitor, InterBULK USA, LLC. On January 6, 2010, Employer filed a petition in the Circuit Court of St. Louis County seeking a temporary and permanent restraining order, injunctive relief, and damages based on Employee's alleged breach of the Agreement. Specifically, Employer alleged that Employee "is currently working as a salesperson at a competing business" and "has contacted and/or solicited business from [Employer's] customers in violation of the Employment Agreement and in so doing has utilized trade secrets and confidential information of [Employer]." The trial court granted Employer's petition for a temporary restraining order on January 15, 2010.

Employee filed a motion for summary judgment claiming he was entitled to summary judgment because: (1) the undisputed material facts established that Employer did not have trade secrets or customer contacts that were protectable under a non-compete agreement; and (2) Employer could not enforce the Agreement's non-competition clause against Employee because Employer previously breached the Agreement. The trial court granted Employee's motion for summary judgment, explaining: "[Employer] cannot enforce the non-compete agreement against [Employee] due to [Employer's] prior breach of the employment agreement and for lack of consideration." Employer appeals.

### Standard of Review

Appellate review of summary judgment is de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). When reviewing a trial court's grant of summary judgment, this court views the record in the light most favorable to the party against whom summary judgment was entered. *Id.* This court will uphold summary judgment only if we find that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Id.*; Rule 74.04(c). An issue of material fact is genuine "only if it is real and substantial; it may not consist 'of conjecture, theory and possibilities.'" *Hanson v. Union Elec. Co.*, 963 S.W.2d 2, 4 (Mo.App. E.D.1998) (*quoting ITT*, 854 S.W.2d at 378).

### Discussion

Employer presents five points on appeal. The first and third points are dispositive of the appeal. We also briefly address point two but decline to address the remaining two points.

"The law of non-compete agreements in Missouri seeks to balance the competing concerns between an employer and employee in the workforce." *Whelan Sec. Co. v. Kennebrew,* 379 S.W.3d 835, 841 (Mo. banc 2012). As the Supreme Court recently explained, employers have a legitimate interest in "engaging a highly trained workforce without the risk of losing customers and business secrets after an employee leaves his or her employment," while employees have a legitimate interest in "having mobility between employers to provide for their families and advance their careers." *Id.* Additionally, "although the law favors the ability of parties to contract freely, contracts in restraint of trade are unlawful." *Id.*

"Missouri courts balance these concerns by enforcing non-compete agreements in certain limited circumstances." *Healthcare Servs. of the Ozarks, Inc. v. Copeland,* 198 S.W.3d 604, 610 (Mo. banc 2006). A court will enforce a non-compete only if it is reasonable, meaning "it is no more restrictive than is necessary to protect the legitimate interest of the employer." *Id.* As such, a non-compete must be narrowly tailored geographically and temporally. *Id.* Additionally, restrictive covenants are not enforceable to protect an employer from mere competition by a former employee, but only to the extent that they protect the employer's trade secrets or customer contacts. *Id.* The employer has the burden to prove that the reasonableness of the non-compete agreement. *Whelan,* 379 S.W.3d at 842.

### 1. Consideration

In its first point on appeal, Employer claims the trial court erred in granting Employee summary judgment because Employer provided Employee "continued employment with [Employer] (and thereby allowed him continued access to its customer relationships) for approximately five (5) years after he signed the [Agreement]." In response, Employee argues that his continued employment alone is not adequate consideration for a non-compete agreement and that Employer must also "show promotion within the company, added responsibility and increase in compensation."[1]

Like any contractual obligation, a non-compete agreement requires the support of adequate consideration. *Mayer Hoffman McCann, P.C. v. Barton,* 614 F.3d 893, 903 (8th Cir.2010) (applying Missouri law). Consideration is "something of value that moves from one party to the other." *Sumners v. Serv. Vending Co.,* 102 S.W.3d 37, 41 (Mo.App. S.D.2003). "A valuable consideration may consist of some right, interest, profit or benefit accruing to one party, or some forbearance, loss or responsibility given[,] suffered or undertaken by the other." *Reed, Roberts Assocs., Inc. v. Bailenson,* 537 S.W.2d 238, 240 (Mo.App.1976) (quotation omitted). "The burden of showing legally sufficient consideration rests on the party relying on the contract." *Earl v. St. Louis Univ.,* 875 S.W.2d 234, 236 (Mo.App. E.D.1994). Although normally the adequacy of consideration is a question of law, "if this determination necessarily turns on disputed facts, then the jury, as the arbiter of facts, must decide the issue." *Id.* at 237.

Missouri courts have recognized that continued at-will employment constitutes consideration for a non-compete agreement where the employer allows the employee "by virtue of the employ-

---

1. We note that Employer has not argued that Employee's continued employment alone constituted sufficient consideration.

ment[,] to have *continued access* to [its] protectable assets and relationships." *Morrow v. Hallmark Cards, Inc.,* 273 S.W.3d 15, 29 (Mo.App. W.D.2008) (emphasis in the original); *see also Nail Boutique, Inc. v. Church,* 758 S.W.2d 206, 210 (Mo.App. S.D.1988); *Computer Sales Int'l, Inc. v. Collins,* 723 S.W.2d 450, 452 (Mo.App. E.D.1986). In the instant case, Employee received in consideration for his covenant not to compete, access to Employer's new and existing customers, as well as continued at-will employment, salary, and commissions.[2]

Employee contends that his continued employment by Employer did not constitute consideration for the non-compete agreement because his salary decreased after he signed it. In support of this argument, Employee cites *Sturgis Equip. Co., Inc. v. Falcon Indus. Sales Co.,* 930 S.W.2d 14 (Mo.App. E.D.1996). There, the employee and the employer executed a

buy-sell agreement providing that "in exchange for [the employer] agreeing to sell stock to [the employee] and buy back [the employee's] stock if he desired to sell or if his employment terminated," the employee agreed not to compete with the employer for two years following his termination. *Id.* at 16. After a demotion and a decrease in compensation, the employee terminated the employment relationship and formed a competing company. *Id.* The employer sued the employee for breach of the non-compete agreement, and the trial court entered judgment in favor of the employer. *Id.*

On appeal, the *Sturgis* court held that the non-compete agreement was unenforceable because its restrictions were "greater than fairly required for [the employer's] protection and was not supported by sufficient consideration." [3] *Id.* at 17. In regard to sufficiency of consideration, the court explained that the consideration

---

**2.** Employee appears to argue that his continued access to Employer's customers did not constitute consideration for his promise not to compete because Employer's customer contacts were not "protectable interests." Whether Employer had a legitimate interest in protecting its customer relationships so as to justify enforcement of the non-competition clause is a separate issue from the sufficiency of consideration. *See, e.g., Nail Boutique,* 758 S.W.2d at 209–10; *Ranch Hand Foods, Inc. v. Polar Pak Foods, Inc.,* 690 S.W.2d 437, 440, 443 (Mo.App. W.D.1985); *USA Chem, Inc. v. Lewis,* 557 S.W.2d 15, 24 (Mo.App.1977). However, because Employee also argued in its motion for summary judgment and as a separate ground for affirming on appeal that Employer failed to show it had protectable interests meriting protection, we address the issue here.

"An express agreement not to compete may be enforced as to employees having substantial customer contacts. It is not necessary to show that there is a secret customer list." *Osage Glass, Inc. v. Donovan,* 693 S.W.2d 71, 74 (Mo. banc 1985). In determining whether an employer's customer contacts merit the

protection of a non-compete agreement, courts consider the "quality, frequency, and duration of an employee's exposure to an employer's customers." *Copeland,* 198 S.W.3d at 611; *see also Easy Returns Midwest Inc. v. Schultz,* 964 S.W.2d 450, 453 (Mo.App. E.D.1998). Based on our review of the record, we conclude that there exist genuine issues of material fact as to the quality, frequency, and duration of Employee's customer contacts. *See, e.g., Easy Returns,* 964 S.W.2d at 454. As a result, this court cannot hold, as a matter of law, that Employer did not have a protectable interest in its customer contacts. *See id.*

**3.** The Court of Appeals later explained: "The essence of the [*Sturgis*] holding is that the evidence did not support a finding of knowledge of trade secrets or of customer contact sufficient to support a restrictive covenant, and so did not justify any kind of restriction." *Alltype Fire Prot. Co. v. Mayfield,* 88 S.W.3d 120, 123–24 (Mo.App. E.D.2002); *see also Mayer Hoffman,* 614 F.3d at 905, n. 21.

of agreeing to buy back the employee's stock was insufficient to support the broad non-compete agreement. *Id.* However, the court explained that the agreement might have been enforceable if it stated that its purpose was to protect any special interest of the company, specified the additional consideration, or was part of an employment contract. *Id.* The *Sturgis* opinion, therefore, does not stand for the proposition that continued employment will only constitute consideration for a post-employment, non-compete agreement where the employee receives an increase in compensation and responsibility.

Finally, Employee argues that his continued employment was insufficient consideration to support the non-compete agreement because the non-compete agreement was not a required condition of Employee's initial employment by Employer. In other words, Employee posits that, because Employer required him to sign the Agreement subsequent to the start of the employment relationship, it is not enforceable in the absence of "extra benefits or compensation for the non-compete agreement." Missouri courts have held, however, that continued employment and the attendant access to the employer's protectable information and relationships constitutes adequate consideration for a non-compete agreement executed after the inception of employment. *See, e.g., Morrow,* 273 S.W.3d at 28–29; *Nail Boutique,* 758 S.W.2d at 210; *Computer Sales,* 723 S.W.2d at 452; *Reed, Roberts Assocs.,* 537 S.W.2d at 241. Point granted.

### 2. Material Breach

In point three, Employer contends that the trial court erred in basing summary judgment upon its finding that "[Employer] cannot enforce the non-compete agreement against [Employee] due to [Employ-er's] prior breach of the employment agreement." Specifically, Employer argues that the issue of whether Employer materially breached the Agreement and is therefore precluded from enforcing the non-competition provision is a question of fact for the fact-finder and was not appropriate for summary judgment.

 "An employer that has materially breached an employment agreement before an employee has violated a covenant not to compete may not enforce the covenant." *Washington County Mem'l Hosp. v. Sidebottom,* 7 S.W.3d 542, 546 (Mo.App. E.D.1999); *see also Supermarket Merch. & Supply, Inc. v. Marschuetz,* 196 S.W.3d 581, 585 (Mo.App. E.D.2006). This is because "[a] party to a contract cannot seek to enforce its benefits where he is the first to violate its terms." *Ozark Appraisal Serv., Inc. v. Neale,* 67 S.W.3d 759, 764 (Mo.App. S.D.2002). An employer's unilateral change to an employment agreement may constitute a material breach of the agreement if it substantially alters the manner and/or amount that the employer pays the employee. *See, e.g., Marschuetz,* 196 S.W.3d at 585; *Luketich v. Goedecke, Wood & Co., Inc.,* 835 S.W.2d 504, 507 (Mo.App. E.D.1992); *Smith–Scharff Paper Co., Inc. v. Blum,* 813 S.W.2d 27, 29 (Mo. App. E.D.1991); *Forms Mfg., Inc. v. Edwards,* 705 S.W.2d 67, 69 (Mo.App. E.D. 1985).

 "The question of whether an employer committed a material breach is largely a factual question reserved for the trier of fact. . . ." *Marschuetz,* 196 S.W.3d at 585; *see also Adrian N. Baker & Co. v. DeMartino,* 733 S.W.2d 14, 17 (Mo.App. E.D.1987). In *Marschuetz,* the employee had been working as a salesman for the employer for seven years when he signed a

non-compete agreement as a condition of continued employment. *Marschuetz*, 196 S.W.3d at 583. The employer later instituted three policy changes affecting the employee's compensation,[4] and the employee resigned his employment and began working for a competitor. *Id.* at 583–84. After hearing evidence, the trial court found that the employer's unilateral changes to the employee's compensation structure did not constitute material breaches of the employment agreement and granted the employer a permanent injunction against the employee. *Id.* at 584. On appeal, the court reversed, holding that the employer materially breached the employment agreement and was therefore barred from enforcing the terms of the non-competition clause against the employee. *Id.* at 585, 587; *cf. Ballesteros v. Johnson*, 812 S.W.2d 217, 222 (Mo.App. E.D.1991) (affirming trial court's judgment granting injunctive relief to the employer because there was substantial evidence to support the trial court's finding that the employer did not materially breach the employment agreement).

■ As in *Marschuetz*, a factual question exists as to whether Employer materially breached the Agreement prior to Employee's termination.[5] In his motion for summary judgment, Employee alleged that Employer "made unilateral changes to [Employee's] employment agreement that were material in nature and [Employer] must be barred from enforcing the non-compete agreement." In support of this claim, Employee stated that Employer: "informed [Employee] that his compensation was going to be changed from $70,000 straight salary to $57,000 salary plus commission of 1 1/2%"; "never paid [Employee] the car allowance of $500 per month"; "failed to pay [Employee's] commissions on a timely basis"; later "reduced [Employee's] commission from 1.5% to 1.25%" and "reduce[d] [Employee's] compensation from an annual salary of $57,000 plus commission to an annual salary of $50,000"; and "initiate[d] a policy that would require [Employee] to pay one-third of any unpaid invoice on a custom order or possibly any order."

■ In response, Employer challenged the materiality of the alleged breaches and denied that it unilaterally reduced Employee's salary to $57,000, alleging that Employee had proposed the change in salary and compensation structure in an email to Employer's president. Employer also alleged in its memorandum opposing Employee's motion for summary judgment that the various changes in the amount and structure of Employee's compensation did not constitute material breaches of the Agreement because "the commission component" of Employee's salary "could cause his earnings to eclipse the $70,000 level."

---

4. Specifically, the employer instituted a: "charge back policy" that withheld a portion of a salesperson's commissions until the customer's invoice was paid; "paid on paid invoices" policy providing for payment of a salesperson's commissions only when a customer's invoice was paid in full; and policy whereby any salesperson who left the company would only be paid commissions on customer invoices paid as of the employee's last day of employment. *Marschuetz*, 196 S.W.3d at 583–84.

5. In *Marschuetz*, the trial court, sitting in equity and hearing the employer's action for an injunction, properly considered the question of a material breach because it was the trier of fact. *Id.* at 585. In the instant case, the trial court made this factual finding in a summary judgment proceeding. As previously stated, the existence of a genuine issue of material fact precludes the entry of summary judgment. *See Whelan*, 379 S.W.3d at 847.

Based on our review of the pleadings, we conclude that genuine issues of fact relating to whether Employer materially breached the Agreement remain to be resolved. We therefore hold that entry of summary judgment on this ground was improper. *See, e.g., Whelan,* 379 S.W.3d at 846. Point granted.[6]

### Conclusion

The judgment of the trial court is reversed and remanded.

LAWRENCE E. MOONEY, P.J., and KURT S. ODENWALD, J., concur.

6. Employer argues that the trial court should not have considered whether Employer materially breached the employment agreement prior to Employee's termination because the Agreement provided that "[a]ny changes in Employee's compensation, position, or job duties subsequent to the execution of this Agreement shall in no way void or otherwise affect the remaining provisions of this Agreement." In other words, Employer maintains that its unilateral changes to the terms of Employee's employment could not, as a matter of law, constitute material breaches and therefore relieve Employee of his obligations under the non-competition clause because the Agreement provided that Employer is permitted to change Employee's "compensation, position, or job duties" without consequence. Employee counters that the trial court correctly granted him summary judgment because the Agreement "is unilateral benefiting only [Employer] and is not enforceable."

Missouri law provides that, where an agreement contains language "permitting one party to unilaterally modify the agreement such that the party could relieve itself of its promises, there is no meaningful mutuality at all, and the contract is illusory and unenforceable." *Frye v. Speedway Chevrolet Cadillac,* 321 S.W.3d 429, 442 (Mo.App. W.D.2010), *citing Am. Laminates, Inc. v. J.S. Latta Co.,* 980 S.W.2d 12, 23 (Mo.App. W.D.1998). "Where the apparent assurance of performance is illusory, it is not consideration for a return promise." Restatement (Second) of Contracts § 77 cmt. a (1981). Employer cannot take a position that renders the Agreement illusory while simultaneously seeking to enforce the Agreement's non-competition clause. Given our decision to remand, we decline to further address this matter given its limited development in the record before us.