LOKEN, Circuit Judge, concurring. I agree that Panera is liable to pay the general managers the bonuses Panera initially promised, but I reach that end traveling a somewhat different,' and perhaps significantly narrower, path. Each general manager had an at-will employment relationship with Panera. This relationship is sometimes called a “unilateral contract.” It is not a legally enforceable contract of employment because it is terminable at will. Morrow v. Hallmark Cards, Inc., 273 S.W.3d 15, 26 (Mo. App. 2008). Typically, an at-will relationship consists of a unilateral offer by the employer to compensate the employee at an offered rate for services performed. After performance, the employee is entitled to receive “the definite amount [offered] and no more, if the agreement is definite as to amount." Restatement (Second) of Agency § 443(a) (1958). Until the relationship is terminated, “either party can announce at any time that there are new conditions on either working or on providing work. The other can say yes or no.” Morrow, 273 S.W.3d at 26. “A promise to pay a bonus in réturn for an at-will employee’s continued employment is an offer for a unilateral contract which becomes enforceable when accepted by the employee’s performance.” Cook v. Coldwell Banker, 967 S.W.2d 654, 657 (Mo. App. 1998). In this case, to provide a financial inducement to retain its at-will general managers, Panera offered a performance bonus program that altered the at-will relationship. The program was reflected in two written agreements signed by each party. First, an Employment and Confidentiality Agreement terminated all prior agreements, confirmed that employment was on an at-will basis, specified the general manager’s base salary and benefits, and provided that “Employee also shall be eligible to receive additional compensation ... as set, forth in the Compensation Plan.” Second, the Joint Venture General Manager Compensation Plan provided, as relevant here, that the general manager would receive “a one-time JV GM Buyout ... on the terms and conditions set forth herein,” provided he is performing the duties of general manager on the .date the JV GM Buyout is made. The Compensar tion Plan , set forth a detailed formula for calculating the Buyout. One specific part of the formula was subject to change by “the Panera JV Board, in the exercise of its sole discretion.” Of critical importance, in my view, the Compensation Plan also provided: (i) “your employment relationship with Panera is terminable at will,” (ii) the Plan is “final, complete and exclusive” except as otherwise provided in the Employment Agreement, and (iii) “No modification or waiver’ shall be valid unless in writing signed by the party against whom the same is sought to be enforced.” As Morrow makes clear, the terms of a typical at-will employment relationship can be unilaterally changed by the employer; the employee can either accept the change or quit. But an employer who offers a unilateral contract is bound by terms promised in the offer, if the employee then accepts the offer by performance. Here, because the Compensation Plan offer was a future bonus intended to encourage extended at-will employment, Panera understandably limited its freedom to change or revoke the Plan by including a no-modification provision. Panera subsequently and unilaterally changed the bonus formula to the general managers’ disadvantage, a change not authorized by the terms of the Compensation Plan and not agreed to by the general managers as the no-modification provision required. This was not breach of a bijateral contract, as the general managers' argued, but it did breach a promise that was an essential term of the unilateral contract Panera offered. Therefore, the modification was unenforceable and the general managers, after they continued to work- and fully performed the services required to accept the offered bonuses, were entitled to hold Panera to the terms of the unilateral contract and collect the bonuses they were initially offered. Cf. Supermarket Merch. & Supply, Inc. v. Marschuetz, 196 S.W.3d 581, 586-87 (Mo. App. 2006). Because I would resolve this dispute within the four corners of the operative contract documents, I need not decide what measure "of part performance by the offeree makes a unilateral contract binding. Here, unlike the facts in Cook, the general managers earned no part of the bonus until the JV GM Buyout was payable, which is why the no-modification provision was essential to make it an effective financial inducement. In more typical at-will employment disputes, I have grave doubt the Supreme Court of Missouri would apply general principles applicable to other kinds of unilateral contracts to conclude that merely beginning at-will employment renders the terms and conditions of that employment irrevocable, as the court seems to conclude.