WHELAN SECURITY CO., Appellant,

v.

Charles KENNEBREW, Sr., and W. Landon Morgan, Respondents.

No. SC 92291.

Supreme Court of Missouri, En Banc.

Aug. 14, 2012.

Rehearing Denied Oct. 30, 2012.

Mark W. Weisman and Bradley G. Kafka of Polsinelli Shughart PC, St. Louis, for Whelan.

Jonathan Sternberg, Kansas City, and Crystal Moody of The Moody Law Firm, Houston TX, for Kennebrew.

William A. Wooten of the Law Office of J. Houston Gordon, Covington, TN, for Morgan.

PATRICIA BRECKENRIDGE, Judge.

Whelan Security Company appeals a trial court's grant of summary judgment in favor of Charles Kennebrew, Sr., and W. Landon Morgan on its action to enforce the non-compete agreements it had with Mr. Kennebrew and Mr. Morgan. On appeal, Whelan claims that the trial court erred in concluding that the non-competition and non-solicitation clauses were invalid as overbroad and unreasonable as to time and space. This Court granted transfer after opinion by the court of appeals. Mo. Const. art. V, sec. 10. This Court determines that the non-compete agreements were unreasonable as written but modifies the terms of the agreements to give effect to the intent of the parties in entering the non-compete agreement. The case is remanded for determination of genuine issues of material fact.

**Factual and Procedural History**

Whelan is a Missouri corporation that provides security guard services nationwide. It has 38 branches in 23 states. In December 2006, Whelan executed an employment agreement with Mr. Morgan to employ him as a branch manager for its Nashville, Tennessee, office. As a branch manager, Mr. Morgan was responsible for handling operations, sales, and marketing, which required him to meet with clients and gave him access to client records and employee files. In November 2007, Whelan also executed an employment contract with Mr. Kennebrew. Whelan hired Mr. Kennebrew in part because of his reputation in the security business in Houston, Texas, and assigned him to work as the director of quality assurance for Whelan's Dallas, Texas, office.[1] Mr. Kennebrew's duties included managing the operations, clients, and customers of the office. With his position, Mr. Kennebrew had access to employee and financial records of the company. He was in contact with Whelan's customers in various parts of Texas, but the parties dispute whether Mr. Kennebrew provided services for Whelan in Houston. Both Mr. Kennebrew's and Mr. Morgan's employment contracts contained non-competition and employee non-solicitation clauses.

The non-competition and employee non-solicitation clauses in Mr. Kennebrew's employment contract stated:

> During the term of this Agreement, and for a period of two (2) years thereafter, whether the termination of this Agreement is initiated by EMPLOYER or EMPLOYEE, EMPLOYEE shall not, without the prior written consent of EMPLOYER, in any manner, directly or indirectly, either as an employee, employer, lender, owner, technical assistant, partner, agent, principal, broker, advisor, consultant, manager, shareholder, director, or officer, for himself or in behalf of any person, firm, partnership, entity, or corporation, or by any agent or employee:
>
> (a) Solicit, take away or attempt to take away any customers of EMPLOYER or the business or patronage of any such customers or prospective customer(s) whose business was being sought during the last twelve (12) months of EMPLOYEE'S employment; or

---

1. Whelan did not assign Mr. Kennebrew to the Houston office because of a non-compete agreement Mr. Kennebrew had with his previous employer.

(b) Solicit, interfere with, employ, or endeavor to employ any employees or agents of EMPLOYER.

(c) Work for a competing business within a fifty (50) mile radius of any location where EMPLOYEE has provided or arranged for EMPLOYER to provide services.

(d) Work for a customer of EMPLOYER or prospective customer(s) whose business was being sought during the last twelve (12) months of EMPLOYEE'S employment, if the work would included providing, or arranging for, services the same as, or similar to, those provided by EMPLOYER.

"Competing business" means any business engaged in providing guard and/or security services the same as, or similar to, those offered by EMPLOYER.

The non-competition and employee non-solicitation clauses in Mr. Morgan's employment contract were similar, except that Mr. Morgan's employee non-solicitation clause had a one-year prohibition instead of a two-year prohibition.

Mr. Morgan and Mr. Kennebrew resigned from Whelan in December 2008 and March 2009, respectively, although Mr. Kennebrew continued to work for Whelan at its request until August 2009. Whelan was aware that Mr. Kennebrew intended to start his own security company, called Elite Protective Services LLC, but Whelan did not believe that Elite would be in direct competition with its services. Mr. Morgan joined Elite a short time after it started.

In November and December 2009, Mr. Kennebrew solicited the business of Park Square Condominiums, a client of Whelan in Houston. On behalf of Elite, Mr. Kennebrew signed a contract to provide security services for Park Square on December 17, 2009. The next day, Mr. Morgan provided employment packets for Elite to Whelan's employees at Park Square. Park Square terminated its relationship with Whelan in January 2010, and Elite retained several of Whelan's employees at Park Square.

Whelan brought action seeking to enjoin Mr. Kennebrew and Mr. Morgan from violating the terms of their employment contracts. It also sought damages for breach of contract, unjust enrichment, and civil conspiracy. After a hearing, the trial court denied Whelan's request for a preliminary injunction. Whelan filed a motion to modify the agreement, followed by each party filing motions for summary judgment. The trial court granted summary judgment in favor of Mr. Kennebrew and Mr. Morgan and overruled Whelan's alternative motions for summary judgment or modification of the agreement. The trial court stated that "the employment agreements at issue in this case, as written, are overbroad, not reasonable as to time and space and therefore are not valid." Whelan appeals the trial court's grant of summary judgment.

On appeal, Whelan asserts five points of error. It claims that the trial court erred in granting summary judgment for Mr. Kennebrew and Mr. Morgan because: (1) the non-competition and non-solicitation clauses are not overly broad and are reasonably limited as to time and geographic scope under Missouri law; (2) Mr. Kennebrew violated a reasonable covenant not to compete by operating a competing company within 50 miles of Whelan's office in Houston and within two years of his resignation; (3) Mr. Kennebrew and Mr. Morgan violated a reasonable covenant not to solicit Whelan's customers by soliciting Park Square within two years of their resignations; (4) Mr. Kennebrew and Mr. Morgan violated a reasonable covenant not to solicit Whelan's employees by soliciting its employees at Park Square; and (5) the trial court failed to modify the agreement

to restrict Mr. Kennebrew from competing with Whelan in a 50–mile radius of Houston.

## Standard of Review

 Summary judgment is appropriate only when the moving party demonstrates that "there is no genuine dispute as to the facts" and that "the facts as admitted show a legal right to judgment for the movant." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993). The movant bears the burden of establishing both a legal right to judgment and the absence of any genuine issue of material fact required to support the claimed right to judgment. *Id.* at 378. The propriety of summary judgment is purely an issue of law, and this Court's review is essentially *de novo. Id.* at 376. "As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.*

## Discussion

In its first point on appeal, Whelan claims that the trial court erred in granting summary judgment in favor of Mr. Kennebrew and Mr. Morgan because the non-compete agreements[2] in the employment contracts were not overbroad and unreasonable as to time and geographic scope. Specifically, it contends that its customer non-solicitation clause is reasonable because it is limited to two years and only to customers and prospective customers that Whelan sought within the last 12 months. It further contends that its employee non-solicitation clause is reasonable under section 431.202.[3] Lastly, Whelan contends that the clause preventing Mr. Kennebrew from competing with Whelan is reasonable because it is limited to 50 miles from any location where, as Whelan's employee, he arranged for services to be provided.[4]

 The law of non-compete agreements in Missouri seeks to balance the competing concerns between an employer and employee in the workforce. On one hand, employers have a legitimate interest in engaging a highly trained workforce without the risk of losing customers and business secrets after an employee leaves his or her employment. *Copeland,* 198 S.W.3d at 609–10. On the other hand, employees have a legitimate interest in having mobility between employers to provide for their families and advance their careers. *Id.* at 610. Furthermore, although the law favors the ability of parties to contract freely, contracts in restraint of trade are unlawful. *Id.*

 In balancing these competing interests, Missouri courts generally enforce a non-compete agreement if it is demonstratively reasonable. *Id.* "A non-compete agreement is reasonable if it is no more restrictive than is necessary to protect the legitimate interests of the employer." *Id.* A non-compete agreement must be narrowly tailored temporally and

---

**2.** The term "non-compete agreement" refers to all restrictive covenants entered into between the employer and employees that restrict post-employment activities of the employees, including non-competition and non-solicitation clauses. *Healthcare Servs. of the Ozarks, Inc. v. Copeland,* 198 S.W.3d 604, 609 n. 2 (Mo. banc 2006).

**3.** All statutory references are to RSMo Supp. 2011 unless indicated otherwise.

**4.** Although Whelan asserts that the provision prohibiting working for a competing business in *Mr. Morgan's* employment contract is reasonable, it concedes that it did not allege a violation of that covenant in the petition. As a result, the issue is not preserved on appeal as to Mr. Morgan and will not be addressed. *Kleim v. Sansone,* 248 S.W.3d 599, 603 (Mo. banc 2008).

geographically and must seek to protect legitimate employer interests beyond mere competition by a former employee. Accordingly, a non-compete agreement is enforceable "only to the extent that the restrictions protect the employer's trade secrets or customer contacts." *Id.* The employer has the burden to prove that the non-compete agreement protects its legitimate interests in trade secrets or customer contacts and that the agreement is reasonable as to time and geographic space. *Id.*

Applied to this case, the non-compete agreements must be reasonable to be enforced against Mr. Kennebrew and Mr. Morgan. Specifically, the customer and employee non-solicitation clauses in Mr. Kennebrew's and Mr. Morgan's employment contracts and the clause prohibiting working for a competitor in Mr. Kennebrew's contract must be no more restrictive than necessary to protect Whelan's legitimate interests.

### Customer Non-solicitation Clauses Overbroad

The customer non-solicitation clauses in this case prohibit Mr. Kennebrew and Mr. Morgan from soliciting Whelan's existing customers for a period of two years. The customer non-solicitation clauses also prohibit Mr. Kennebrew and Mr. Morgan, for a period of two years, from soliciting any prospective customers whose business was sought by Whelan during the last 12 months of their employment. As written, the customer non-solicitation clauses are more broad than necessary to protect Whelan's legitimate interest in customer contacts.

 An employer has a legitimate interest in customer contacts to the extent it seeks to protect against " 'the influence an employee acquires over his employer's customers through personal contact.' " *Id.* at 611 (quoting *Schmersahl, Treloar & Co.*

*v. McHugh,* 28 S.W.3d 345, 349 (Mo.App. 2000)). A customer is "one who repeatedly has business dealings with a particular tradesman or business." *Silvers, Asher, Sher & McLaren, M.D.s Neurology, P.C. v. Batchu,* 16 S.W.3d 340, 345 (Mo.App. 2000); *see also Payroll Advance, Inc. v. Yates,* 270 S.W.3d 428, 434 n. 4 (Mo.App. 2008). Furthermore, an employee's ability to influence customers depends on the "quality, frequency, and duration of an employee's exposure to an employer's customers[, which is] crucial in determining the covenant's reasonableness." *Copeland,* 198 S.W.3d at 611. Other circumstances also may be relevant to this determination, including the amount and location of the employer's customers, as well as the former employee's position with the employer. *See Mid–States Paint & Chemical Co. v. Herr,* 746 S.W.2d 613, 617 (Mo.App. 1988) (analyzing the former employee's position and the location of the employer's customers).

Although restrictive covenants generally must be tailored narrowly in both temporal and geographic scope, courts have enforced customer non-solicitation clauses without a geographic limitation when other limitations to the prohibited conduct exist or when the employee had significant contact with a substantial number of the employer's customers. In *Mills v. Murray,* for instance, the court enforced a three-year customer non-solicitation clause with no geographic limitation for an employer located in 11 states when the prohibition extended only to customers with whom the former employee dealt within the last 12 months. 472 S.W.2d 6, 11–12 (Mo.App. 1971); *see also Nat'l Starch & Chem. Corp. v. Newman,* 577 S.W.2d 99, 104–05 (Mo.App.1978) (enforcing a two-year customer non-solicitation clause that was limited to customers with whom employee dealt). In *Schott v. Beussink,* the court enforced a 15–month customer non-solici-

tation clause with no geographic limitation and a prohibition against contacting any of the employer's customers when it was a small, local employer. 950 S.W.2d 621, 626–27 (Mo.App.1997). Furthermore, in *Systematic Business Services, Inc. v. Bratten,* the court enforced a customer non-solicitation clause despite it having no geographic limitation, prohibiting contact with all of the employer's customers, and involving a national company, when the employee utilized extensive customer lists and had substantial and significant contact with the employer's customers throughout the nation. 162 S.W.3d 41, 51 (Mo.App. 2005).

▌ Similar to *Mills, Schott,* and *Bratten,* the customer non-solicitation clauses in this case have no limitation as to the geographic scope of the prohibition. Unlike those cases, however, there is no additional limiting language or circumstances in the case that otherwise would limit the scope of the restriction. The customer non-solicitation clauses prohibit contact with *any* customer of Whelan regardless of whether Mr. Kennebrew and Mr. Morgan knew it was Whelan's customer or previously dealt with that customer. Whelan is a large, national corporation with 38 branches in 23 states, and Mr. Kennebrew and Mr. Morgan were assigned to the Dallas and Nashville branches, respectively. While Mr. Kennebrew and Mr. Morgan had significant client contact in those areas and possibly in the Houston area, there are no disputed facts showing that they had significant contact with a substantial number of Whelan's customers throughout the nation such as to warrant a national prohibition. The customer non-solicitation clauses for existing customers, therefore, are unreasonably overbroad.

▌ The customer non-solicitation clauses also prohibit Mr. Kennebrew and Mr. Morgan from soliciting Whelan's *prospective* clients it sought during the last 12

months of their employment. In *Copeland,* this Court questioned whether an employer has a legitimate interest in prospective customers:

> It could be argued that preventing a former employee from seeking *new* customers in competition with his or her former employer goes beyond protecting the employer's interest and is overly restrictive. However, in many situations it may be difficult to distinguish between competition for new or existing customers.

198 S.W.3d at 611 (internal citations omitted). This statement accurately defines the scope of an employer's legitimate interest in customer contacts. Courts enforce non-compete agreements only to the extent they protect the employer from *unfair* competition, not from all competition by a former employee. *Id.* at 610–11 ("[F]reedom from all competition ..., however lucrative it might be to [the employer,] is not to be protected against. He must be prepared to encounter that even at the hands of a former employee.") (quoting *Herbert Morris, Ltd. v. Saxelby,* 1 A.C. 688, 702 (1916)).

▌ The prospective customer non-solicitation clauses in this case prevent Mr. Kennebrew and Mr. Morgan from soliciting a business that Whelan sought as a customer in any of its 38 branches during the last 12 months of their employment. As a provider of security services, Whelan's prospective customers potentially could include any business that might benefit from increased security, from retail facilities and warehouses to corporate offices and apartments. Preventing Mr. Kennebrew and Mr. Morgan from soliciting any of Whelan's prospective customers throughout the nation would not protect Whelan from " 'the influence an employee acquires over his employer's customers through personal contact' " but instead

would protect it from competition altogether by Mr. Kennebrew and Mr. Morgan. Although it may be difficult or impossible in some circumstances to distinguish between prospective and existing customers, *id.* at 611, the non-solicitation clauses in this case broadly restrict all solicitation of Whelan's prospective customers regardless of how tenuous the relationship is between Whelan and the business or how detached the former employees were from the solicitation by Whelan. *Cf. Gelco Exp. Corp. v. Ashby*, 689 S.W.2d 790, 796 (Mo.App.1985) (directing trial court to enter an injunction preventing a former employee from soliciting the employer's existing customers and those "which it solicited within six months prior to that date" in the territory in which the former employee was directly responsible for soliciting those customers); *see also Kessler–Heasley Artificial Limb Co. v. Kenney*, 90 S.W.3d 181, 187 (Mo.App. 2002). Accordingly, the provision restricting solicitation of Whelan's prospective customers reaches beyond that necessary to protect its legitimate interest in customer contacts.[5]

■■■■■ Although the customer non-solicitation clause in Mr. Kennebrew's and Mr. Morgan's employment contracts are unreasonably broad as written, "ordinary rules of contractual construction and enforcement are not necessarily applicable to non-compete agreements." *Payroll Advance, Inc. v. Yates*, 270 S.W.3d 428, 437

(Mo.App.2008). The general purpose of non-compete agreements is to protect an employer from unfair competition without imposing an unreasonable restraint on the former employee. *Copeland*, 198 S.W.3d 604 at 611. "Protection of the employer, not punishment of the employee, is the essence of the law." *Id.* (quoting *Superior Gearbox Co. v. Edwards*, 869 S.W.2d 239, 247 (Mo.App.1993)). Accordingly, when the provisions of a non-compete clause impose a restraint that is unreasonably broad, appellate courts still can give effect to its purpose by refusing to give effect to the unreasonable terms or modifying the terms of the contract to be reasonable. *See Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 74 (Mo. banc 1985) (enforcing a non-compete clause but refusing to enforce it to the extent it was unreasonable); *Orchard Container Corp. v. Orchard*, 601 S.W.2d 299, 304 (Mo.App.1980); *see also Superior Gearbox Co.*, 869 S.W.2d at 249.[6]

■■■ The provisions of the customer non-solicitation clauses that prohibit Mr. Kennebrew and Mr. Morgan from soliciting any existing Whelan customer or any prospective customer from the last 12 months, throughout the nation, are unreasonably broad under the circumstances. Based on the circumstances of the case, this Court modifies the customer non-solicitation clause to eliminate the provision prohibiting Mr. Kennebrew and Mr. Mor-

---

5. The extent of Whelan's legitimate interest in customer contacts is distinguishable from the legitimate interest an employer may have in customer lists, which are protectable as a trade secret and can include information about prospective customers. *See Nat'l Rejectors, Inc. v. Trieman*, 409 S.W.2d 1, 18–19 (Mo. banc 1966).

6. The ability of courts to modify unreasonable non-compete agreements does not prevent courts from refusing to enforce non-compete agreements that are wholly unreasonable. *See Paradise v. Midwest Asphalt Coatings, Inc.*,

316 S.W.3d 327, 330 (Mo.App.2010) ("the trial court could have invalidated the non-compete agreement rather than modifying it."); *Payroll Advance, Inc.*, 270 S.W.3d at 437 ("We are not convinced, however, that a trial court is compelled to take action to modify an agreement it finds broader than necessary."); *R. E. Harrington, Inc. v. Frick*, 428 S.W.2d 945, 951 (Mo.App.1968) ("It is true that our courts have always refused to enforce totally reasonable [non-compete] contracts, but they have done so for the reasons of equity and common sense, and not because of some archaic rule of draftsmanship.").

gan from soliciting existing Whelan customers except those customers with whom Mr. Kennebrew and Mr. Morgan dealt, respectively, during their employment. This Court also modifies the customer non-solicitation cause to eliminate the prohibition against solicitation by Mr. Kennebrew and Mr. Morgan of Whelan's prospective customers. Because the customer non-solicitation clauses are enforceable as modified, this Court must determine enforceability of the remaining non-compete agreements.

### Employee Non-solicitation Clauses Enforceable

The employee non-solicitation clauses in the employment contracts prohibit Mr. Kennebrew and Mr. Morgan from soliciting any employees or agents of Whelan for a period of two years. Whelan asserts that the two-year employee non-solicitation clause is enforceable under section 431.202.

Section 431.202 provides the extent to which employee non-solicitation clauses are enforceable. It states:

1. A reasonable covenant in writing promising not to solicit, recruit, hire or otherwise interfere with the employment of one or more employees shall be enforceable and not a restraint of trade pursuant to subsection 1 of section 416.031, RSMo, if:

. . .

(3) Between an employer and one or more employees seeking on the part of the employer to protect:

(a) Confidential or trade secret business information; or

(b) Customer or supplier relationships, goodwill or loyalty, which shall be deemed to be among the protectable interests of the employer; or

(4) Between an employer and one or more employees, notwithstanding the absence of the protectable interests described in subdivision (3) of this subsection, so long as such covenant does not continue for more than one year following the employee's employment; provided, however, that this subdivision shall not apply to covenants signed by employees who provide only secretarial or clerical services.

2. Whether a covenant covered by this section is reasonable shall be determined based on the facts and circumstances pertaining to such covenant, but a covenant covered exclusively by subdivision (3) or (4) of subsection 1 of this section shall be conclusively presumed to be reasonable if its post-employment duration is no more than one year.

Section 431.202.

The plain language of section 431.202.2 provides that an employee non-solicitation covenant between an employer and employee conclusively is presumed reasonable when its purpose is to protect the interests of the employer identified under section 431.202(3). These protectable interests include confidential or trade secret business information, relationships with customers or suppliers, the goodwill of the company, and company loyalty. Section 431.202.1(3)(a),(b). Even if an employee non-solicitation covenant seeks to protect interests not identified in section 431.202(3), it is nonetheless per se reasonable if its duration is for a period of one year or less following the conclusion of the employee's employment. Section 431.202.2. Finally, a covenant that does not seek to protect the employer's interest under section 431.202.1(3) and exceeds one year in duration still can be reasonable based on the facts and circumstances of the case. Section 431.202.2.

 The employee non-solicitation clauses at issue in this case prohibit Mr. Kennebrew and Mr. Morgan from soliciting, interfering with, or employing any employee of Whelan. The duration of Mr.

Morgan's covenant is one year. As a result, it is per se reasonable under section 431.202.2 and is enforceable against Mr. Morgan. Mr. Kennebrew's covenant, on the other hand, falls outside of the safe harbor for one-year restrictions because it lasts for a period of two years. Whelan nonetheless asserts that Mr. Kennebrew's covenant is reasonable under section 431.202 based on the facts and circumstances of the case. This Court, however, need not reach the issue of the covenant's reasonableness under the facts and the circumstances because there is a genuine factual issue as to the purpose of the employee non-solicitation clause. *See ITT Commercial Fin. Corp.*, 854 S.W.2d at 380.

The employee non-solicitation clause in Mr. Kennebrew's employment contract is silent as to its purpose under section 431.202(3). It states that Mr. Kennebrew shall not "[s]olicit, interfere with, employ, or endeavor to employ any employees or agents of EMPLOYER" for a period of two years. In its petition, Whelan asserted that the purpose of the non-compete agreement is "to protect and safeguard against any interference with its customer contacts, employees and against the disclosure of its Secret and Confidential Information[.]" Furthermore, Whelan's president and chief executive officer stated in a deposition that the reason his employees sign non-compete agreements is "to protect [the relationships established between the company and my management team] and my confidential information for a reasonable amount of time after an employee separates." Because the provisions of section 431.202 reveal that employee non-compete agreements can serve varying purposes, some of which are per se reasonable under section 431.202.1(3), this Court must determine the specific purpose of the employee non-solicitation clause as intended by the parties.

The primary rule of contract construction is to "ascertain the intent of the parties and give effect to that intention." *DeBaliviere Place Ass'n v. Veal*, 337 S.W.3d 670, 676 (Mo. banc 2011). If a contract is unambiguous, "the intent of the parties is to be discerned from the contract alone" based on the plain and ordinary meaning of the language used. *Id.* However, a contract may be ambiguous if it is susceptible to more than one interpretation, which is a legal issue determined by the court. *Eisenberg v. Redd*, 38 S.W.3d 409, 411 (Mo. banc 2001). If the ambiguity cannot be resolved within the four corners of the contract, the parties' intent can be determined by use of parol evidence. *Graham v. Goodman*, 850 S.W.2d 351, 354 (Mo. banc 1993). Resolution of the ambiguity may then be a factual issue to be resolved by the finder of fact. *See id.*

In this case, the lack of any language regarding the purpose of the employee non-solicitation clause prevents this Court from determining the purpose of the clause as a matter of law. The intent of the parties must instead be determined by the use of parol evidence, creating a factual issue for the trier of fact. Accordingly, there is a genuine issue of fact to be determined as to the purpose of the employee non-solicitation clause, and summary judgment is improper as to this issue.

### Non-competition Clause in Mr. Kennebrew's Contract Enforceable

The non-competition clause in Mr. Kennebrew's employment contract prohibits him, for a period of two years, from working for a competing business within 50 miles of any location where he provided or arranged for Whelan to provide services. Considerable precedent in Missouri supports the reasonableness of a two-year

non-compete agreement for an operations manager that is limited to 50 miles from where services were rendered by the employee. *See Osage Glass, Inc. v. Donovan,* 693 S.W.2d 71, 74 n. 2 (Mo. banc 1985) (enforcing a non-compete agreement prohibiting an operations manager from working for a competitor in Missouri for a period of three years); *Alltype Fire Protection Co. v. Mayfield,* 88 S.W.3d 120, 123–24 (Mo.App.2002) (enforcing a two-year non-compete agreement spanning a 100–mile radius against a customer service representative); *Mid–States Paint & Chem. Co.,* 746 S.W.2d at 617 (enforcing a non-compete agreement against a salesman that was modified by the trial court to a 125–mile radius for a two-year period); *Orchard Container Corp. v. Orchard,* 601 S.W.2d 299, 304 (Mo.App.1980) (enforcing a non-compete agreement against a former company president covering 125 miles and for a period of three years). As shown by these cases, the non-competition clause in this case is enforceable against Mr. Kennebrew.

As an enforceable covenant against Mr. Kennebrew, a genuine factual issue exists as to whether Mr. Kennebrew's actions violated the covenant. Specifically, the parties dispute whether Mr. Kennebrew provided services in Houston while employed with Whelan in the Dallas office. Resolution of this factual issue is necessary to determine if a violation of the non-compete agreement occurred. Entry of summary judgment on this ground, therefore, is improper.

### Conclusion

This Court holds the customer non-solicitation clauses in Mr. Kennebrew's and Mr. Morgan's contracts are overbroad. It modifies the contracts to eliminate the provision prohibiting Mr. Kennebrew and Mr. Morgan from soliciting existing Whelan customers, except those customers with whom Mr. Kennebrew and Mr. Morgan dealt, respectively, during their employment and to eliminate the prohibition against soliciting Whelan's prospective customers. The employee non-solicitation clauses in both contracts and the non-competition clause in Mr. Kennebrew's contract are enforceable. There remain genuine issues of fact that must be resolved by the trier of fact—namely, whether the employee non-solicitation clause in Mr. Kennebrew's contract was motivated by a valid purpose under section 403.202(3) and whether Mr. Kennebrew's actions violated his covenant not to compete. The judgment of the trial court is reversed, and the case is remanded. Because the case is remanded, this Court need not address Whelan's remaining points on appeal.

TEITELMAN, C.J., RUSSELL, FISCHER, and STITH, JJ., and BEETEM, Sp.J., concur.

DRAPER, J., not participating.