

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION FOUR</u>

| | | |
|---|---|---|
| WHELAN SECURITY CO., | ) | ED101847 |
| | ) | |
| Plaintiff/Respondent/Cross-Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | |
| | ) | |
| CHARLES KENNEBREW, SR., | ) | Honorable Maura B. McShane |
| | ) | |
| Defendant/Appellant/Cross-Respondent. | ) | Filed: September 29, 2015 |

<u>Introduction</u>

Charles Kennebrew, Sr. (Kennebrew) appeals from the trial court's October 10, 2013 Summary Judgment in favor of Whelan Security Co. (Whelan) on its claims that Kennebrew breached the customer non-solicitation clause and the 50-mile non-competition clause in his employment agreement (Agreement). Whelan appeals from the trial court's June 26, 2014 Order and Judgment awarding it, in part, $165,000 in attorney's fees. We reverse and remand.

<u>Factual and Procedural Background</u>

Whelan is a Missouri corporation based in St. Louis County that provides security services in a number of cities throughout the country, including Houston, Texas and Dallas, Texas. In November 2007, Whelan hired Kennebrew, who signed the Agreement, which

included a covenant not to compete against Whelan.[1] Kennebrew, who had previously worked

for a competitor of Whelan, executed the Agreement on November 26, 2007. Its restrictive

covenants provided that:

> During the term of this Agreement, and for a period of two (2) years thereafter, whether the termination of this Agreement is initiated by EMPLOYER or EMPLOYEE, EMPLOYEE shall not, without the prior written consent of EMPLOYER, in any manner, directly or indirectly, either as an employee, employer, lender, owner, technical assistant, partner, agent, principal, broker, advisor, consultant, manager, shareholder, director, or officer, for himself or in behalf of any person, firm, partnership, entity, or corporation, or by any agent or employee:
>
> (a) Solicit, take away or attempt to take away any customers of EMPLOYER or the business or patronage of any such customers or prospective customer(s) whose business was being sought during the last twelve (12) months of EMPLOYEE's employment; or
>
> (b) Solicit, interfere with, employ, or endeavor to employ any employees or agents of EMPLOYER,
>
> (c) Work for a competing business within a fifty (50) mile radius of any location where EMPLOYEE has provided or arranged for EMPLOYER to provide services.
>
> (d) Work for a customer of EMPLOYER or prospective customer(s) whose business was being sought during the last twelve (12) months of EMPLOYEE's employment, if the work would include providing, or arranging for, services the same as, or similar to, those provided by EMPLOYER.
>
> "Competing business" means any business engaged in providing guard and/or security services the same as, or similar to, those offered by EMPLOYER.

Whelan hired Kennebrew because of his reputation in the security guard business, his

business contacts, and his ability to attract clients, especially in Houston. Kennebrew began

working at Whelan as the Director of Quality Assurance and was assigned to Dallas in

---

[1] W. Landon Morgan (Morgan) was also a former employee of Whelan and a defendant in this case, but was eventually dismissed by Whelan after appeal and remand. Morgan is not involved in this appeal but is occasionally mentioned.

2

November 2007, in part to comply with a non-compete agreement[2] Kennebrew had with his previous employer. Kennebrew's duties included managing "all operations, clients, [and] customers" and he had access to employee records, including compensation, and to Whelan's financial information. Kennebrew contacted Whelan customers in different parts of Texas, including Houston, where he had more than ten clients.

On March 30, 2009, Kennebrew submitted a letter of resignation to Whelan but continued to work for Whelan until August 2009. Kennebrew started his own security guard company, Elite Protective Services, LLC (Elite).

Park Square Condominiums (Park Square) was a customer of Whelan in Houston from 2007 until the end of 2009. On December 17, 2009, Park Square signed a contract with Kennebrew on behalf of Elite to provide security services. Park Square terminated its relationship with Whelan effective January 2, 2010, and was replaced by Elite, which retained the services of a number of Whelan security personnel who had worked at the Park Square location.

On January 4, 2010, Whelan filed a petition seeking injunctive relief against Kennebrew, as well as damages for breach of contract, unjust enrichment, and civil conspiracy. After a hearing over a period of several days, the trial court denied Whelan's request for a preliminary injunction. Whelan filed a motion to modify, and the parties filed cross-motions for summary judgment. On January 7, 2011, the trial court issued summary judgment in favor of Kennebrew, concluding the employment agreement was overbroad, not reasonable as to time and space, and

---

[2] The term "non-compete agreement" refers to all restrictive covenants entered into between the employer and employees that restrict post-employment activities of the employees, including non-competition and non-solicitation clauses. Healthcare Servs. of the Ozarks, Inc. v. Copeland, 198 S.W.3d 604, 609 n. 2 (Mo.banc 2006).

therefore invalid as a matter of law. The trial court denied Whelan's motion for summary judgment and dismissed the case with prejudice.

Whelan appealed this judgment, which, after being reversed by this Court based on our finding that the agreement was not per se unreasonable, was transferred to the Missouri Supreme Court at Kennebrew's request. The Supreme Court vacated this Court's opinion and issued its own, reversing the trial court's summary judgment based on its finding that the non-compete agreement was unreasonably overbroad as written but could be modified. Whelan Sec. Co. v. Kennebrew, 379 S.W.3d 835, 839 (Mo.banc 2012). The Supreme Court modified the terms of the non-compete agreement by eliminating the provision prohibiting Kennebrew from soliciting existing Whelan customers, except those customers with whom Kennebrew dealt during his employment, and eliminating the prohibition against soliciting Whelan's prospective customers. Id. at 844-45. The Court held the employee non-solicitation clause and the 50-mile non-competition clause were enforceable. The Court remanded the case for resolution of whether the employee non-solicitation clause was motivated by a valid purpose under Section 431.202(3)[3] and whether Kennebrew's actions violated his covenant not to compete.

On remand, the trial court again entertained cross-motions for summary judgment. On October 10, 2013, the trial court granted summary judgment in Whelan's favor on its claims that

---

[3]All statutory references are to RSMo 2006. Section 431.202 provides in pertinent part:

>    1. A reasonable covenant in writing promising not to solicit, recruit, hire or otherwise interfere with the employment of one or more employees shall be enforceable and not a restraint of trade pursuant to subsection 1 of section 416.031 if:
>    …
>
> >    (3) Between an employer and one or more employees seeking on the part of the employer to protect:
> >
> > >    (a) Confidential or trade secret business information; or
> > >
> > >    (b) Customer or supplier relationships, goodwill or loyalty, which shall be deemed to be among the protectable interests of the employer….

4

Kennebrew (1) breached the customer non-solicitation clause, as modified, and (2) breached the 50-mile non-competition clause. The court found no genuinely disputed issues of fact that Kennebrew had breached these two clauses of the agreement.

The trial court denied Whelan's motion for summary judgment on its claim Kennebrew breached the employee non-solicitation clause. The trial court found, in accordance with the Supreme Court's opinion, that additional parol evidence needed to be adduced to determine the purpose of this clause, because such purpose could not be discerned from the four corners of the agreement alone. Whelan, 379 S.W.3d at 846 (lack of any language regarding purpose of employee non-solicitation clause prevents Court's determination of clause's purpose as matter of law … intent of parties must instead be determined by use of parol evidence on remand). The trial court denied Kennebrew's motion for summary judgment.

On November 7, 2013, Whelan filed separate motions for continuance, summary judgment on its damages, and sanctions. On November 14, 2014, the trial court granted Whelan's motion for continuance, pursuant to which the case was removed from its jury trial setting of December 2, 2013, and continued to such time as the court could hear and rule on Whelan's motions for summary judgment and sanctions. The court also ruled discovery was closed.

On January 21, 2014, the trial court heard Whelan's motions for summary judgment on damages and for sanctions. On February 11, 2014, the court denied both motions. On February 25, 2014, by consent of the parties and order of the court, a one-day bench trial on damages was set for April 28, 2014.

On April 28, 2014, trial was had, at which the court heard evidence and argument and took the matter under submission, allowing the parties to file post-trial briefs. On June 26, 2014,

the trial court entered its Order and Judgment. The trial court assessed Whelan's damages in lost profits from Kennebrew's breach of the Agreement's client non-solicitation clause and 50-mile non-competition clause at $69,375.75, entering judgment thereon in Whelan's favor. The court found insufficient evidence had been adduced to establish the purpose of the employee non-solicitation clause, and thus Whelan's claim it had been breached was denied along with any associated claim for damages or injunctive relief. The trial court also awarded Whelan $165,000 in attorney's fees. The trial court denied Whelan's claim for unjust enrichment because it invited duplicative damages. The court further held that "all arguments submitted and not addressed have been considered and denied." This appeal follows.

Points on Appeal

In his first point, Kennebrew claims the trial court erred in granting Whelan summary judgment that Kennebrew had violated the customer non-solicitation clause in § 3(a) of the Agreement by soliciting Park Square's business because Kennebrew presented evidence in response to Whelan's motion for summary judgment that he had not solicited Park Square's business and, rather, Park Square's manager had solicited his business.

In his second point, Kennebrew maintains the trial court erred in granting Whelan summary judgment that Kennebrew had violated the 50-mile non-competition clause in § 3(c) of the Agreement by operating Elite in Houston because Kennebrew raised an affirmative defense that Whelan had waived the Agreement and, in opposition to Whelan's motion for summary judgment, presented evidence Whelan had waived § 3(c) by his superiors at Whelan knowing about his operation of Elite in Houston, tolerating it, and expressly agreeing to allow him to do so.

6

In his third point, Kennebrew contends the trial court erred in granting Whelan summary judgment that Kennebrew had violated the 50-mile non-competition clause in § 3(c) of the Agreement by operating Elite in Houston because Kennebrew presented evidence that he only provided services for Whelan in Dallas, not Houston, and merely assisted with some Houston contacts while providing services for Whelan in Dallas.

On cross-appeal, Whelan challenges the trial court's judgment awarding it $165,000 in attorney's fees as arbitrary, capricious and unreasonable and asserts its reasonable attorney's fees were $707,410.

Standard of Review

Our review of the trial court's grant of summary judgment is *de novo*. ITT Comm. Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo.banc 1993). The propriety of summary judgment is purely an issue of law. Id. We need not defer to the trial court's order, as its judgment is founded on the record submitted and the law. Id. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be used by the trial court to determine the propriety of sustaining the motion initially. Id.

Summary judgment is proper only in those situations in which the movant can establish there is no genuine issue as to any material fact and it is entitled to judgment as a matter of law. Rule 74.04[4]; ITT, 854 S.W.2d at 377. The movant has the burden to show a right to judgment flowing from facts about which there is no genuine dispute. ITT, 854 S.W.2d at 378. A court, in considering a motion for summary judgment, tests simply for the existence, not the extent, of these genuine disputes. Id. A genuine dispute exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. Id. at 382. If a trial court, in order to grant summary judgment, must overlook material in the record

---

[4] All rule references are to Mo. R. Civ. P. 2014.

7

that raises a genuine dispute as to the facts underlying the movant's right to judgment, then summary judgment is not proper. Id. at 378.

In determining the propriety of summary judgment, we are guided by three overriding principles. First, we review the record in the light most favorable to the party against whom judgment was entered. ITT, 854 S.W.2d at 376. Any evidence in the record that presents a genuine dispute as to the material facts defeats the movant's prima facie showing. Id. at 382. Second, the facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. Id. at 376. The movant must establish that the material facts are not in genuine dispute. Id. at 382. If there is no contradiction and the movant has shown a right to judgment as a matter of law, the non-movant must create a genuine dispute by supplementing the record with competent materials that establish a plausible, but contradictory, version of at least one of the movant's essential facts. Id. It is not the "truth" of the facts upon which the court focuses, but whether those facts are disputed. Id. Where they are not, the facts are admitted for purposes of analyzing a summary judgment motion. Id. Finally, we accord the non-movant the benefit of all reasonable inferences from the record. Id. at 376.

## Discussion

### Point I – Customer Non-solicitation Clause in § 3(a)

Kennebrew maintains the fact of his solicitation of Park Square cannot be established by relying on the Supreme Court's finding that he did so under the "law of the case" doctrine.

In Whelan's statement of uncontroverted facts in support of its motion for summary judgment on its claim that Kennebrew breached the customer non-solicitation clause, it cites only to the Whelan opinion as evidence in the record supporting its statement of fact that Kennebrew

8

solicited Whelan's customer Park Square. In <u>Whelan</u>, the Court stated, "In November and December 2009, Mr. Kennebrew solicited the business of Park Square Condominiums, a client of Whelan in Houston…." <u>Id.</u> at 840. Kennebrew maintains the Supreme Court's statement that he solicited the business of Park Square while employed by Whelan cannot be given "law of the case" status thus establishing it as beyond dispute for purposes of the summary judgment proceedings after remand.

This statement was not part of the holding in <u>Whelan</u>. As such, a citation to <u>Whelan</u> is inadequate evidentiary support for this fact for the purposes of summary judgment. In <u>Whelan</u>, the holding was limited to the enforceability of the contract:

> This Court holds the customer non-solicitation clauses in Mr. Kennebrew's and Mr. Morgan's contracts are overbroad. It modifies the contracts to eliminate the provision prohibiting Mr. Kennebrew and Mr. Morgan from soliciting existing Whelan customers, except those customers with whom Mr. Kennebrew and Mr. Morgan dealt, respectively, during their employment and to eliminate the prohibition against soliciting Whelan's prospective customers. The employee non-solicitation clauses in both contracts and the non-competition clause in Mr. Kennebrew's contract are enforceable.

<u>Whelan</u>, 379 S.W.3d at 847. After stating its holding, the Court set out what it deemed to be outstanding disputed issues of fact, precluding summary judgment:

> There remain genuine issues of fact that must be resolved by the trier of fact-namely, whether the employee non-solicitation clause in Mr. Kennebrew's contract was motivated by a valid purpose under section 403.202(3) and whether Mr. Kennebrew's actions violated his covenant not to compete.

<u>Id.</u> The Court then reversed the judgment of the trial court and remanded the case. <u>Id.</u>

Kennebrew also claims the trial court erred in granting summary judgment to Whelan because he presented evidence that he had not solicited Park Square's business, but rather Park Square's manager had solicited his business. We find this issue of fact remains controverted, in that there is evidence in the summary judgment record

9

supporting both sides of the controversy. For this additional reason, summary judgment on the issue was inappropriate. Point I is granted.

### Point II − Fifty-Mile Non-Competition Clause in § 3(c) – Waiver

Kennebrew maintains the trial court erred in granting Whelan summary judgment that Kennebrew violated the 50-mile non-competition clause by operating Elite in Houston because Kennebrew raised an affirmative defense that Whelan had waived the terms of the Agreement by having knowledge of his operation of Elite in Houston, tolerating it, and expressly agreeing to allow him to do so.

Whether Whelan waived its right to enforce the 50-mile non-competition clause by having knowledge of and accepting Kennebrew's competing business is an issue of fact precluding summary judgment. See, *e.g.*, JumboSack Corp. v. Buyck, 407 S.W.3d 51, 53 (Mo.App. E.D. 2013) ("whether Employer waived its right to enforce the non-compete agreement against Employee is an issue of fact"). Further, both Kennebrew and Whelan set forth evidentiary support from the summary judgment record for their respective opposing positions on whether Whelan waived said right. This issue also involves determinations of credibility that must be made by the trier of fact and are not appropriately decided on summary judgment. Accordingly, summary judgment should not have been granted on this claim. Point II is granted.

### Point III − Fifty-Mile Non-Competition Clause in § 3(c)

Kennebrew contends the trial court erred in granting Whelan summary judgment that Kennebrew had violated the 50-mile non-competition clause by operating Elite in Houston in that Kennebrew presented evidence that he only provided services for Whelan in Dallas, not Houston. The parties do not dispute Kennebrew immediately began working for a competing business in Houston after leaving Whelan's employment. The issue is whether Kennebrew

10

provided services or arranged for Whelan to provide services in Houston while employed with Whelan in the Dallas office.

Kennebrew insists he merely assisted Whelan with some Houston contacts while providing services for Whelan in Dallas. However, there is also contradictory evidence in the record. For example, in his deposition, Kennebrew testified Whelan used his contacts in Houston to get Whelan new customers and he was successful in moving some Houston customers to Whelan. Kennebrew also testified at the preliminary injunction hearing on September 10, 2010, that he had contact with no fewer than ten customers of Whelan in Houston including, but not limited to, Park Square.

After determining the 50-mile non-competition clause in the Agreement was valid and enforceable as written,[5] the Supreme Court in Whelan held:

> As an enforceable covenant against Mr. Kennebrew, a genuine factual issue exists as to whether Mr. Kennebrew's actions violated the covenant. Specifically, the parties dispute whether Mr. Kennebrew provided services in Houston while employed with Whelan in the Dallas office. Resolution of this factual issue is necessary to determine if a violation of the non-compete agreement occurred. Entry of summary judgment on this ground, therefore, is improper.

Whelan, 379 S.W.3d at 847.

The parties espouse and the record supports two plausible but contradictory accounts of material facts with regard to this issue. Further, as in Count II, there are credibility issues to be weighed and the issue of waiver as asserted in Count II comes into play as well with regard to

---

[5] Specifically, the Court said:

The non-competition clause in Mr. Kennebrew's employment contract prohibits him, for a period of two years, from working for a competing business within 50 miles of any location where he provided or arranged for Whelan to provide services. Considerable precedent in Missouri supports the reasonableness of a two-year non-compete agreement for an operations manager that is limited to 50 miles from where services were rendered by the employee.

Whelan, 379 S.W.3d at 846-47.

11

Point III, especially when Kennebrew asserts Todd McCullough, Whelan's Vice President of Operations for the Southern United States, told him any work he provided on behalf of Whelan while in Houston did not count toward violating the 50-mile non-competition clause when these acts, on their face, could be considered to be in contravention of the parties' written agreement.

For these reasons, the trial court should not have granted judgment as a matter of law on this issue. Point III is granted.

Cross-Appeal – Attorney's Fees

Whelan maintains its reasonable attorney's fees were $707,410 and the trial court's award of $165,000 was arbitrary, capricious and unreasonable. Because this Court has reversed the trial court's summary judgment in Whelan's favor, Whelan is no longer the prevailing party and thus no longer merits attorney's fees under the Agreement. Accordingly, we vacate the award of attorney's fees and deny Whelan's point on cross-appeal as moot.

Conclusion

The trial court's October 10, 2013 Summary Judgment is reversed. The trial court's June 26, 2014 Order and Judgment awarding Whelan $69,375.75 in lost profit damages and $165,000 in attorney's fees is vacated, since the underlying judgment on liability has been reversed by this Court on appeal. This cause is remanded for proceedings consistent with this opinion.

_Sherri B. Sullivan_
Sherri B. Sullivan, P.J.


Patricia L. Cohen, J., and
Kurt S. Odenwald, J., concur.